## McELHANEY vs. THE STATE.

1. When the bill of exceptions does not set out all the evidence, the Appellate Court will not presume that an affirmative charge was abstract, but, on the contrary, that it was fully warranted by the proof.

2. When an indictment charges the defendant with "harboring *and* concealing" a runaway slave, he may be convicted on proof of either harboring *or* concealing.

3. The terms "harbor" and "conceal," as used in the fourteenth section of the

fourth chapter of the Penal Code, (Clay's Digest 419 § 14,) are descriptive of two offences: a person may be convicted of "harboring," on proof that he, knowing the slave to be a runaway, fed her, or furnished her with shelter and the like, to enable her to remain away from her master, or to deprive her master of her service, although he may not have "concealed" her.

APPEAL from the City Court of Mobile.

Tried before the Hon. ALEX. McKINSTRY.

DANIEL CHANDLER, for the appellant:

1. The indictment charged that the defendant "harbored *and* concealed" the slave. The charge of concealing was a substantive, descriptive, material one, and ought to have been proved as laid.—Roscoe's Crim. Ev. 107, 109. But the proof showed that the slave was not concealed, but was "frequently in the street, so that McElhaney's neighbors often saw her out and about, and she seemed to come and go as she pleased": the evidence, therefore, did not sustain the allegation.

2. The second part of the charge was abstract: there was no evidence that the defendant "supported and entertained" the slave, or "furnished her with a house, a place of residence," or that he even knew she was on his premises; the only fact disclosed by the record, is, that "it appeared that the slave had been at McElhaney's all the time she had been run away."— How can this court determine whether the facts authorized the charge? The presumption is, that there was no such evidence. —12 Ala. 149.

3. The court erred in its definition of "what constituted the act of harboring." The definition of the term "harbor," according to Webster, is: "1. To shelter, to secure, to secrete; as, to *harbor* a thief. 2. To entertain, to permit to lodge, rest or reside; as, to *harbor* malice or revenge; *harbor* not a thought of revenge. 3. To lodge or abide for a time, to receive entertainment; as, 'This night let's *harbor* here in York,'— Shak." In an indictment, the term can have but one meaning, as the illustrations given show: "to shelter, to secure, to secrete,"—all imply secrecy, concealment. If a thief is "seen frequently in the streets, so that all the neighbors see him out and about, and seems to come and go as he pleases," could it be said that he was *harbored?*

M. A. BALDWIN, Attorney General, *contra.*

CHILTON, C. J.—The appellant was indicted under the fourteenth section of the fourth chapter of the Penal Code, which is as follows : " Every person who shall hereafter harbor or conceal any runaway slave or slaves, or fugitives from their masters, or other person having charge of them, knowing that they are such, such person, so offending, shall, on conviction, be fined not less than one hundred dollars, and not more than one thousand dollars, or be imprisoned in the penitentiary not more than two years, at the discretion of the jury trying the same."

The court charged the jury, that they must be satisfied that the slave was a runaway, and that McElhaney knew of that fact, and, so knowing it, harbored her; that the State did not insist upon the charge of concealing the slave ; that to constitute the act of harboring, it was sufficient if McElhaney, knowing her to be a runaway, supported and entertained her, or provided her with a home or place of residence, although she did " go about in the streets, and was seen by the neighbors." To this charge the defendant excepted, and this exception presents the only question for our revision.

1. It is argued, that the proof did not warrant this charge; but it will be observed that the charge is affirmative, and all the proof is not set out. The rule in such cases is well settled, that we will not presume that such charge is abstract, but, on the contrary, that the proof fully warranted the charge.

2. But it is argued, that the indictment is for harboring *and* concealing, and that the charge warrants a conviction for harboring merely.

The statute uses the term in the disjunctive, " harboring *or* concealing," and if the defendant is guilty of either, the offence is made out ; but we know of no case which holds that the State is bound to prove both, in order to warrant a conviction of either, although both are charged. In Mooney v. The State, 8 Ala. 328, the indictment charged that the prisoner did, unlawfully and feloneously, inveigle, steal, carry and entice away two negro slaves: *Held*, that, although these were charged in the same count, the State was entitled to convict the prisoner on proof of either. See, to the same point, Ben v. The State, 22 Ala. 9 ; The State v. Murphy, 6 *ib*. 846 ; Wharton's Am. Crim. Law 165.

3. But it is further contended, that the charge is wrong,

because it allows the jury to find a harboring without conceal-
ing. It is certain, whatever meaning lexicographers may attach
to the term "harbor," that the Legislature intended, in the
statute before us, to make two offences, the one harboring, the
other concealing a runaway slave, knowing such slave to be
runaway, &c. The plain object was, to withhold from slaves
inducements either to run away, or to prevent their return to
their masters after they had run away, by inhibiting all persons
from sheltering, supporting, keeping, or protecting them, in such
manner as that they could live apart and independently from
their masters. Although the prisoner may not have concealed
the slave, yet if, knowing her to be a runaway from her master,
he fed her, or furnished her shelter and the like, he is guilty of
a violation of the statute, if this was done to enable her to
remain away from her master, or to deprive him of her service.
This charge, taken in connection with the last charge given,
very fully lays down the law, snd, we think, is wholly free from
error.

Let the judgment be affirmed.