## TEMPE (A FREEDWOMAN) vs. THE STATE.

[INDICTMENT FOR MURDER.]

1. *Presumption in favor of judgment.*—Where the indictment describes the defendant as a freedman, and alleges that the offense was committed before the finding thereof; while the record does not show whether the offense was committed while the defendant was a slave, or after he became free,—the appellate court will presume, when necessary to sustain the judgment of the court below, that the offense was proved to have been committed after the abolition of slavery.

2. *General criminal statutes applicable to freedmen.*—For offenses committed by freedmen since the abolition of slavery in this State, they may be indicted, convicted, and punished, under the general criminal statutes applicable to all other persons, although these statutes were not applicable to them while slaves.

3. *Proviso in repealing criminal statute as to prior offenses.*—The proviso to the 5th section of the "act to establish a new Penal Code," approved the 23d February, 1866, (Session Acts, 1865-6, p. 124,) excepts from the operation of the repealing clause of that section all prosecutions for offenses committed prior to the day on which said new Penal Code went into operation, (June 1st, 1866,) and leaves such offenses to be punished by the former laws applicable to them.

4. *Sufficiency of indictment in description of person slain, and as affected by duplicity.*—In an indictment for murder, "an infant child, name to the grand jury unknown," is a sufficient description of the person slain; and it is no objection to the indictment, that it describes the

child, in different counts, as the infant child of the prisoner, and as an infant child generally, not naming its mother or father: nor that the murder is alleged, in different counts, to have been committed by different means or instruments.

5. *Murder; what constitutes.*—If a mother intentionally kills her infant child, who is incapable of any resistance, by beating it over the head with an instrument calculated to produce death, the law would imply malice on her part; although it might not imply malice, if the child was capable of taking her life, and was attempting to take it with means adequate to the end, and she killed it to preserve her own life.

6. *Presumption in favor of affirmative charge.*—An affirmative charge of the court, which, upon any supposable state of facts, would be correct, will be presumed to have been justified by the evidence, unless such presumption is rebutted by the record.

FROM the Circuit Court of Choctaw.
Tried before the Hon. JOHN MOORE.

The indictment in this case was returned into court on the 8th March, 1866, and contained four counts. In the first count, the prisoner was described as "Tempe, if known by any other name, to the grand jury unknown, a freed-woman"; and in the other counts no descriptive words were added to the christian name. The first count averred, that she unlawfully, and with malice aforethought, "killed an infant child, name to the grand jury unknown, by striking it with a stick and club"; the second, that she killed "an infant child, name to the grand jury unknown, by striking and beating it"; the third, that she killed "an infant child, name unknown to the grand jury, by exposing said infant to the cold and weather"; and the fourth, that she killed "her infant child, name unknown, by want of care and attention, and by leaving it, and refusing to care and protect the same." On the trial of the cause, at the September term, 1866, the prisoner moved to quash the indictment, "on the ground that there is no law authorizing her trial, conviction, and punishment"; which motion the court overruled, and the prisoner excepted. The prisoner demurred to the indictment, "on the ground that the first count therein charges her with having killed 'an infant child, name to the grand jury unknown', without any further description as to identity; while the fourth count charges

her with having killed 'her infant child', and the second
and third counts charge her with having killed 'an infant
child, name to the grand jury unknown', without any fur-
ther description as to identity." The court overruled the
demurrer, and the prisoner excepted; and issue was then
joined on the plea of not guilty.

The bill of exceptions does not set out any of the evi-
dence adduced on the trial; but it states that "it was ad-
mitted by the State's attorney, on the trial, that the defend-
ant was a slave up to the time of the surrender"; and that
"after the court had charged the jury, the defendant asked
the court to give the following charge : 'Although the jury
may believe, from the evidence, that the defendant inten-
tionally killed her infant child, they cannot find her guilty
of murder, unless they believe she did it maliciously'." The
court gave this charge, "but with this explanation—that if
they believed, from the evidence, that the defendant inten-
tionally killed her infant child, by beating it over the head
with an instrument calculated to produce death, the law im-
plied malice"; to which qualification of the charge the de-
fendant excepted.

The verdict of the jury was, "guilty of murder in the
second degree." The prisoner moved in arrest of judg-
ment, "because the verdict of the jury was returned into
court, received and recorded, and the jury discharged, in
the absence of the prisoner's counsel, without their having
given their previous consent thereto, and without having
an opportunity to poll the jury before they were so dis-
charged." The court overruled the motion in arrest, "be-
cause the verdict of the jury was returned while the court
was actually in session, and not during a recess, and the
prisoner herself was present at the time, though her counsel
were not"; to which ruling the prisoner also reserved an
exception. The court sentenced the prisoner to imprison-
ment in the penitentiary for ten years.

MORSE & ROBERTS, for the prisoner.—1. The prisoner was
once a slave, and was set free by the ordinance of the con-
vention on the 22d September, 1865. No provision was
made by the convention for the punishment of offenses

Tempe (a freedwoman) v. The State.

committed by or upon persons of that class, but the duty was devolved and enjoined on the next general assembly; and no law was passed on the subject until the act of February 23d, 1866, which did not go into effect until the 1st June following. There was, then, no law in force, under which the prisoner could be indicted and punished.—*Chaney v. The State*, 31 Ala. 345, and cases there cited.

2. The indictment is fatally defective for duplicity, and for uncertainty in description.—2 Archb. Crim. Pl. 206–7, and notes; Barbour's Crim. Law, 318.

2. The charge asked ought to have been given, without qualification. Malice is an essential ingredient of murder. The fact that a mother kills her infant child intentionally, does not raise the presumption of malice; she may have .thus killed it under circumstances which would preclude the idea of malice.—Arch. Crim. Pl. 211–12, and notes.

JOHN W. A. SANFORD, Attorney-General, *contra.*—1. An indictment may contain several distinct counts for the same offense.—1 Bish. Crim. Pro. § 182. Therefore the indictment in this case was properly drawn.—*Mayo v. The State*, 30 Ala. 32; *Cawley v. The State*, 37 Ala. 152.

2. The criminal laws of the State operate alike upon all inhabitants, without regard to race.—*Eliza v. The State*, 39 Ala. 693.

3. The presence of the accused, when the jury returned their verdict, was necessary; but the absence of the counsel at that time affords no reason for the reversal of the judgment of the court below.—*Crusen v. The State*, 10 Ohio, 288; *Sutcliffe v. The State*, 18 Ohio, St. R. 469.

4. It was the duty of the court, in giving the charge requested, to explain it, and, by giving additional instructions, "to prevent misunderstanding or misapplication of it."—*Morris v. The State*, 25 Ala. 57–8.

BYRD, J.—The counsel for appellant contends, that there was no law in force in this State authorizing the punishment of freedmen for offenses committed by them at the time the offense charged was perpetrated. It does not appear from the indictment, or the bill of exceptions,

when the offense was committed, whether before the prisoner was set free or afterwards; and as the bill of exceptions does not purport to set out the evidence introduced on the trial, we must make every legitimate intendment in favor of the rulings of the court below, and the judgment thereof. The indictment was found and filed at the March term of the circuit court for the year 1866. The indictment describes the appellant as " a freedwoman"; but this does not necessarily imply that she committed the offense with which she is charged before or after she became free. But, in order to sustain the judgment of the court, we must presume, upon the state of this record, that she committed the offense prior to the finding of the indictment, and after she became free.

2. This court has held, that freedmen were criminally. responsible, under the laws applicable to other free persons of color; and such persons being liable to prosecution for the commission of the offenses mentioned in sections 3080 and 3081 of the Code, and to the punishment prescribed therein, we cannot give our assent to the position taken by appellant's counsel. We conceive that the case of *Eliza (a freedwoman) v. The State*, decided at January term, 1866, is decisive of this question.—39 Ala. 693.

3. It is contended, also, that the act approved February 23, 1866, adopting the Penal Code, repealed the law punishing this offense, which was in force at the time it was committed; and therefore the appellant could not be convicted and sentenced under this indictment. But the saving clause of that act is a reply to the position taken by counsel.

4. It is insisted that the indictment is defective, for uncertainty in description, and for duplicity. The indictment is sufficiently certain, as to matter of description, under the provisions of the Code; and the objection of duplicity is not sustainable, as will appear by reference to the Code, and the cases of *Mayo v. The State*, 30 Ala. 32; *Cawley v. The State*, 37 Ala. 152, and *Cheek v. The State*, 38 Ala. 107, and authorities therein cited. We are of opinion that the words " infant child, name to the grand jury unknown," is a sufficient description in an indictment of

a human being upon whom the offense of *murder* may be committed.

5–6. The explanatory charge given by the court could, upon a state of facts that might have existed, be vindicated; and as the facts in evidence on the trial are not set out in the record, we must presume that facts were in evidence which authorized the court to give that charge. If a mother should *intentionally* kill her infant child, who was incapable of any resistance, by beating it over the head with an instrument calculated to produce death, the law would imply malice; although it *might* not if a mother should *intentionally* kill her infant child, who was capable of taking her life, and was attempting to take it with means adequate to the end, if she did so under the necessity of preserving her own life. A party complaining of error must show it affirmatively; otherwise, the ruling of the court below must be affirmed.—*Morris v. The State*, 25 Ala. 57; *Miller v. Jones*, 29 Ala. 174; *Eskridge v. The State*, 25 Ala. 30; *Butler v. The State*, 22 Ala. 43; *McElhaney v. State*, 24 Ala. 71.

This disposes of all the material points raised in the argument of appellant's counsel; and upon a careful examination of the record, we have been unable to detect any error. The judgment of the circuit court, therefore, must be affirmed, and the sentence of the court below carried into execution as prescribed by law.