# Judge v. The State.

## Indictment for Murder.

1. *Section of the Code defining murder; erroneous charge.*—The section of the Code (R. C. § 3653; Code of 1876, § 4295,) defining or enumerating instances of murder in Alabama, covers the whole field of murder, and clearly asserts that the crime, when attended with any of the enumerated circumstances, falls within the *first degree*, and every murder not attended with some of these enumerated circumstances, falls within the *second degree*. Hence a charge stating that, "These are only instances of murder in the first degree, and the crime is not limited to a killing under these enumerated circumstances," is erroneous.

2. *Erroneous charge, ignoring essential elements of murder.*—A charge asserting that, "When an assault is made, and resistance or a striking back is justified, yet, even here, when the striking back or resistance is made with a deadly weapon, and the weapon used in a very cruel manner, not justified by the nature and danger of the assault, the offense amounts to murder," is erroneous, because it ignores the nature of the assault resisted, the reasonable probability of escape by retreat, the heat of blood likely to be engendered by an assault, the question of cooling time, and the inquiry of a "formed design," without which there can be no murder under the facts postulated in such charge.

3. *Homicide in resenting an assault; when manslaughter; when murder.*—A homicide committed in undue resentment of an unlawful assault or battery, if done in the heat of blood caused thereby, before cooling time, and without previously formed design, is but manslaughter; yet if one who is assaulted, under cover of such assault as a pretext, pursuant to a "formed design," and not in reasonable defense of himself from grievous bodily harm, nor while dethroned of his reason by passion engendered by such assault, slay his opponent with a deadly weapon, it is murder.

4. *Same; murder; self-defense; manslaughter.*—Death by excessive resistance of an assault, even when cruel, is not always murder. If inflicted pursuant to a formed design, if there be other satisfactory evidence of premeditation, then it is *murder*. On the other hand, if the resistance be not greatly disproportioned to the assault, and death ensue by misadventure, this is *self-defense*. If the resistance be excessive, and the fatal blow be inflicted in the heat of blood, although with a deadly weapon, and there be no evidence of previous malice, formed design, or of such deliberation as to show that reason held sway, it is *manslaughter*.

5. *Cases cited by Mr. Bishop, held not to sustain his theory.*—The court refers to the adjudged cases cited by Mr. Bishop, (*Oraton's case*, 6 Ire. 164; *Curry's case*, 1 Jones' Law, 280; *Scott's case*, 4 Ire. 409; *Hayward's case*, 6 Carr. & P. 157; *Shaw's case*, Ib. 372; *Thomas' case*, 7 Ib. 817; *King's case*, 2 Va. Cas. 78; *Lynch's case*, 5 Carr. & P. 324,) in support of the principle which constitutes the charge in consideration, and does not think they sustain the principle announced by Mr. Bishop, in support of which they are cited—such principle postulating too little as a guide for a jury—the court holding, that while murder *may* be committed under the circumstances laid down by Mr. Bishop, and contained in the said charge, yet such killing is not *necessarily* murder.

6. *Homicide reduced to manslaughter; murder; questions for jury; words will not extenuate homicide.*—It is the frailty of human passion, suddenly excited by sufficient provocation to an unpremeditated act of violence, which tones homicide down to manslaughter; while calculation, deliberation, formed design, contrivance, brutality, are characteristics of murder; and these are always ques-

[Judge v. The State.]

tions for the jury, under appropriate instructions. Mere words, no matter how insulting, never reduce a homicide to manslaughter.

7. *Same; principle laid down in Field's case.*—An affray may occur or sudden provocation be given, which, if acted on in the heat of passion produced thereby, might mitigate homicide to manslaughter; yet if the provocation, though sudden, be not of that character which would, in the mind of a just and reasonable man, stir resentment to violence, endangering life, or if "cooling time" had intervened, the killing would be murder. Such homicide may also be attended with evidence of express malice—as preparation for the killing, the weapon employed, &c. (Approving *Field's case*, 52 Ala. 348.)

8. *Matters to be observed in charging the jury.*—In charging a jury, respect should be had to the evidence; and instruction should be given on every hypothesis of fact, which the testimony may tend to support. The court remarks, that "we are pleased to observe, that in this case the old, sound, and much disregarded doctrine, that 'no man stands excused for taking human life, if, with safety to his own person, he could have avoided or retired from the combat,' has been given in charge, and must have been acted on by the jury."

APPEAL from City Court of Eufaula.

Tried before the Hon. ALPHEUS BAKER.

Defendant, Alexander Judge, was indicted for killing unlawfully and with malice aforethought, one Robert D. Wallace, by striking him with a stick or wagon standard. Issue was joined upon the plea of "not guilty," and defendant was convicted of murder in the first degree and sentenced to be hanged on Friday, the 27th day of July, 1877.

The testimony was, that the deceased was foreman of a plough squad on the plantation of one Wm. H. Locke, and it was the duty of deceased to report any idleness or misconduct of the plough hands, and that defendant was one of such squad, and a larger man than deceased; that deceased had been instructed by Mr. Locke to hurry up idle hands, and if they refused to report them. About 11 o'clock on the morning of the killing, the hands had come out of the field on account of rain, and when the rain had ceased, the defendant and other hands were going to the lot for their mules. Defendant being a little slow, deceased remarked to him, "Alex, go and get your mule," to which defendant replied, "Ain't I gwine"; deceased replied, "if you are you are going blamed slow," when defendant said, "if you want me to go faster, make me." Deceased then remarked, "Alex, next time I speak to you and you answer me that way, I'll knock your blamed mouth wide open." Defendant then looked back at deceased, but said nothing. Deceased then said, "Alex, if you want a difficulty you can get it right now," to which defendant replied, "if you want one you can get it." Deceased then turned towards defendant and, having gone a few paces in ordinary gait, put his right hand in his pocket, when defendant went to the right, five or six steps from deceased, and snatching up a wagon standard returned, and meeting the deceased struck him two licks on the left arm,

[Judge v. The State.]

which the deceased had thrown up to keep off the blows—the right hand of deceased hanging by his side. The defendant hit deceased a third time, on the right shoulder, and a fourth time, on the head, when deceased fell towards the defendant, who struck him a light blow on the back while he was down. Deceased jumped up immediately. By this time two persons present caught hold of defendant, standing between him and deceased. Deceased was standing still, when defendant jerked loose from those holding him, with the standard still in his hand, and stepped towards deceased and struck him on the head, just above the ear, knocking him down—defendant having both hands on the standard and striking with all his force. Deceased got up "looking foolish," and picked up a knife which was lying on the ground shut up, and opened it and started towards the defendant, when some one present remarked, "shut up your knife, you can't get to that man (the defendant) while he has got that stick in his hand, he will kill you." Deceased then shut the knife, put it in his pocket, and went into a house near by and ordered the hands to go to ploughing. He then came out of the house, got on his horse and rode towards Mr. Locke's house, about a mile off, where he died in a few hours from compression of the brain, (as testified by physicians,) produced by a fracture of the skull from the blow given by defendant.

After the close of the evidence, the court charged the jury at length ; but the only portions of the charge necessary to be considered, from the view taken of the case by this court, are stated in the opinion.

From the judgment of the court below, the defendant now appeals to this court.

SAMUEL W. GOODE and A. H. MERRILL, for appellant.—1. The crime of murder in the first degree, is limited to the enumerated circumstances mentioned in § 3653 of the Code. Unless the circumstances are just what that section makes necessary, there can be no murder in the first degree in Alabama, that section being the only standard by which the crime is to be determined, and containing the only definition for the crime in this State.

2. That part of the charge beginning, "When an assault is made and a resistance or striking back is justified, yet," &c., is erroneous, because it directs attention to a certain selected portion of the evidence to the exclusion of others.

JOHN W. A. SANFORD, Attorney-General, and S. H. DENT, contra.

STONE, J.—Speaking of section 4295 of the Code of 1876, (Rev. Code, § 3653,) the City Court charged the jury, that "These are only instances of murder in the first degree, and the crime is not limited to a killing under these enumerated circumstances." In this the City Court erred. The section of the Code, with marked emphasis, enumerates the circumstances under which a homicide perpetrated becomes murder in the first degree, and then adds: "Every other homicide committed under such circumstances as would have constituted murder at common law, is murder in the second degree." The statute, in its two branches, covers the whole field of murder, and asserts that the crime, when attended with any of the enumerated circumstances, falls within the first degree; and every murder, not attended with some of those enumerated circumstances, falls within the second degree. The boundary between the two degrees is clearly defined; and when the murder does not come up to the requirements of some one or more of the classes enumerated and defined as constituting murder in the first degree, it necessarily belongs to the second, which is in form and substance a residuary clause, and covers the whole ground not previously disposed of.

2. In another branch of the charge, we think the City Court erred. The language of the court was, "When an assault is made, and resistance, or a striking back is justified, yet, even here, when the striking back or resistance is made with a deadly weapon, and the weapon is used in a very cruel manner, not justified at all by the nature and the danger of the assault, the offense amounts to murder." This instruction or definition ignores the nature of the assault thus resisted, whether dangerous or not—the reasonable probability of escape by retreat—the heat of blood likely to be engendered by an assault—the question of cooling time, and the inquiry, never to be overlooked, of a formed design, without which there can be no murder, under the facts postulated in this charge.

3. A homicide committed in undue resistance or resentment of an unlawful assault, or assault and battery, if done in the heat of blood caused thereby, before cooling time has supervened, and without any previously formed design, is but manslaughter. We do not say that murder may not be committed in excessive resistance to an assault and battery. It frequently is so committed. If one who is assaulted, under its cover as a pretext, pursuant to a formed design, either general or special, and not in reasonable defense of himself from grievous bodily harm, and not in that sudden dethronement of the reflecting faculty which such assault may engen-

der, slay his assailant with a deadly weapon, this is murder. See *McManus v. The State*, 36 Ala. 285; 2 Bish. Cr. Law, § 736.

4. Death by excessive resistance of an assault, even when cruel, is not always murder. If inflicted pursuant to a formed design—or, if there be other satisfactory evidences of premeditation, then it is murder. On the other hand, if the resistance be not greatly disproportioned to the assault, and death ensue by misadventure, this is self-defense. If the resistance be excessive, and the fatal blow be inflicted in the heat of blood, although with a deadly weapon, yet if there be no evidence of previous malice, formed design, or such evidence of deliberation as to show that reason held sway, this is manslaughter.—*Tempe v. State*, 40 Ala. 350.

5. We are aware that the charge we have been criticising, is copied literally from a part of section 725 (632) of 2d volume Bishop's Criminal Law. This is but a part of the section. The context reads as follows: "If the weapon is deadly, then, supposing the passion not excited, the offense is murder, though committed without any intent to kill. But in those circumstances in which the reason is clouded, if the party assailed uses a deadly weapon, and kills his adversary with it, his offense is only manslaughter." Then comes the section we have been considering, to-wit: "Yet, even here, when resistance is made by a deadly weapon, and the weapon is used in a very cruel manner, not justified at all by the nature and danger of the assault, the offense amounts to murder."

In support of this last principle, several cases are cited by Mr. Bishop. We have examined them all. The strongest case is that of *State v. Craton*, 6 Ire. Cases, 164; an opinion by Chief Justice RUFFIN. In that case, Craton, the prisoner, was in the commission of a great wrong against the marital rights of the deceased, in which he persevered and persisted, notwithstanding the remonstrance of the deceased. And when the prisoner struck the fatal blow, he was in no danger of an attack; and was evidently influenced by a desire to drive the deceased away, that he might carry out his unauthorized possession of deceased's wife, and not by any fear of danger to himself. Notwithstanding Craton had given Harrison, the deceased, such great provocation, and notwithstanding the insulting surroundings in which the latter was then placed, that great jurist, RUFFIN, employed the following language: "The court agrees that if Harrison either assaulted or imprisoned Craton unlawfully, it would amount to a legal provocation. The question is, whether that was the case. There was no actual assault in this case. There was

no attempt to strike. There was a mere threat, that the deceased would kill the prisoner, if he did not give up the other's wife, and, accompanying the threat, the deceased drew his knife. But he made no attempt to use it, unless it be that he raised his hand with the knife drawn as the prisoner approached him. But if he did so, that would not be an unlawful assault; for, as the prisoner got from his horse, stripped himself, and declared that he would beat the deceased, if he did not leave him in possession of his wife, and then went at the defendant for the purpose of beating him, with an instrument, apparently, from its size, sufficient to give a heavy blow, and with the instrument raised, and the deceased still sat on his horse, and did not move from his place, an attempt, if made by deceased, to strike under those circumstances, and supposing the deceased was not wrong in stopping the prisoner from carrying away his wife, would have been justifiable in self-defense. The prisoner was in the act of making the first assault, and that, probably, of a grievous kind, and the deceased would have had a right to prevent him if he could." We may add, this was clearly a case of murder.

A later case, in the same court—*State v. Curry*, 1 Jones' Law, 280—like the one above, contains a fine collection of authorities, and is worthy of being consulted. The court said, "If two men fight upon a sudden quarrel, and one be killed, it is but manslaughter, although the death is caused by the use of a deadly weapon. But if, in such case, the killing be committed in an *unusual manner*, showing evidently that it is the effect of deliberate wickedness—malice, not passion—it is murder, although there be a high provocation." We consider this a very correct statement of the rule, in both its aspects.—See, also, *State v. Scott*, 4 Ire. 409.

In the case of *Rex v. Hayward*, 6 Car. & Payne, 157, the court very accurately said, "In a case of death by stabbing, if the jury are of opinion that the wound was given by the prisoner while smarting under a provocation so recent and so strong, that the prisoner might be considered as not being at the moment the master of his own understanding, the offense will be manslaughter; but if there had been, after the provocation, sufficient time for the blood to cool, and for reason to resume its seat, before the mortal wound was given,. the offense will amount to murder; and if the prisoner displayed thought, contrivance and design, in the mode of possessing himself of the weapon, and again replacing it after the blow was struck, such exercise of contrivance and design denotes rather the presence of judgment and reason, than of violent and ungovernable passion."

The case of *Rex v. Shaw*, 6 Car. & P. 372, showed deliberate purpose and formed design, and was rightly adjudged to be murder, although the homicide was perpetrated in a rencontre.—See, also, *Rex v. Lynch*, 5 Car. & P. 324; *King v. Corn*, 2 Va. Cases, 78—a strong case, showing formed design.

In *Rex v. Thomas*, 7 Car & P. 817, Baron PARKS ruled that "The law requires two things—1st, that there should be the provocation; and, 2d, that the fatal blow should be clearly traced to the passion arising from that provocation. Therefore, if from the circumstances it appear that the party, before any provocation given, intended to use any deadly weapon towards any one who might assault him, this would show that a fatal blow given afterwards was not to be attributed to the provocation, and the crime would, therefore, be murder."

In the body of the opinion, the court said: "If you see that a person denotes, by the manner in which he avenges a previous blow, that he is not excited by a sudden transport of passion, but, under the influence of that wicked disposition, that bad spirit which the law terms 'malice,' in the definition of wilful murder, then the offense would not be manslaughter. * * And so, if you find that before the stroke is given, there is a determination to punish any man who gives a blow, with such an instrument as the prisoner used, [it was a sword cane]; because, if you are satisfied that before the blow was given, the prisoner meant to give a wound with such an instrument, it is impossible to attribute the giving of such a wound to the passion of anger excited by that blow; for no man who was under proper feelings—none but a bad man, of a wicked and cruel disposition—would really determine before hand to resent a blow with such an instrument." Referring to a threat made by the prisoner, the court instructed the jury, that "if he [the prisoner] really intended what he said, and meant to strike any one with that instrument who might give him a blow, it is for you [the jury] to say whether that intention does not amount to that badness of disposition to which I have referred."

We have now referred to the adjudged cases cited by Mr. Bishop in support of the principle which constitutes the charge we are considering, and we do not think any or all of them sustain the principle announced by Mr. Bishop, in support of which they are cited. As a guide for a jury, it postulates too little, as shown above.

6. We repeat, we do not say, or intend to be understood as affirming, that "where resistance is made by a deadly weapon,

[Judge v. The State.]

and the weapon is used in a very cruel manner, not justified at all by the nature and danger of the assault," this can not be murder. Very far from it. Murder may be committed under these circumstances; but such killing is not necessarily murder. It depends on the nature and instrument of the assault which is resisted, and the attendant circumstances, as indicating contrivance and design, or fierce passion, suddenly aroused. It is the frailty of human passion, suddenly excited by sufficient provocation to an unpremeditated act of violence, which tones the offense down to manslaughter; while calculation, deliberation, formed design, contrivance, brutality, are characteristics of the higher crime of murder. And these are always questions for the jury, under appropriate instructions. But mere words, no matter how insulting, never reduce a homicide to manslaughter.

7. In *Fields v. The State*, 52 Ala. 348, this court said, "An affray may have occurred, or a provocation been given, which, if acted on in the heat of passion it would suddenly produce, the law, in tenderness to human frailty, would receive as mitigating an unlawful killing to manslaughter. If, however, the provocation, though sudden, was not of that character which would, in the mind of a just and reasonable man, stir resentment to violence, endangering life; or if, between the time it was given and the killing, 'cooling time,' as it is quaintly and forcibly expressed in the older books—time in which passion would have subsided, unless wrath had been nursed—intervened, the killing would be murder. The malice was implied, because violence was carried too far, or because it was supposed the provocation was seized upon to gratify revenge. Such a homicide may also have been attended with evidences of express malice, as in the preparation for the killing, or the weapon employed, or some other evidence of it." This is a correct, and succinct statement of the principle.

8. There may be some other parts of the charge not reconcilable with the views above expressed, but we suppose what we have said will furnish a sufficient guide on another trial. In charging a jury, respect should be had to the evidence—and instruction should be given on every hypothesis of fact, which the testimony may tend to support. We are pleased to observe that in this case, the old, sound, and much disregarded doctrine, that no man stands excused for taking human life, if, with safety to his own person, he could have avoided or retired from the combat, has been given in charge, and must have been acted on by the jury. It is to be regretted that this salutary rule is not universally observed by juries, without reference to the social standing of the prisoner.

[Bailey v. The State.]

Its observance would exert a wholesome restraint on unbridled passion and lawlessness, and would, in the end, preserve to the commonwealth many valuable lives. But this question more frequently arises on the inquiry between self-defense and manslaughter, than between manslaughter and murder. Still, it may arise between the latter.

The judgment of the City Court is reversed, and the cause remanded. Let the prisoner remain in custody until discharged by due course of law.