[Newell v. The State.]

# Newell *v.* The State.

*Indictment for Murder.*

1. *Constitutionality of statute; how question should be raised; amendment of jury law.*—In order to raise the question of the constitutionality of a statute amending a jury law, the motion to quash the indictment or the plea in abatement must aver facts which show that the grand jury and the venire for the trial of the defendant were drawn, summoned and empannelled under the amendatory statute; and in a trial under an indictment for murder, where the original jury law was complete within itself, was constitutional and valid, and there is nothing in the record on appeal to show that the grand jury and special venire were drawn, summoned and empannelled under the amendatory act, the constitutionality of which is attacked by motion to quash and plea in abatement, and the amending act does not repeal the provisions of the original act, the provisions of said act will be considered as in force at the time of the drawing, summoning and empannelling the juries, and it will be presumed that the grand jury and special venire were drawn, summoned and empannelled under the original act; and demurrers to such motion and plea are properly sustained.

2. *Evidence; identifying articles of clothing.*—On a trial for murder, where it is shown that the last time deceased was seen he was with defendant, and that near a pile of ashes containing human bones there were found buttons and articles of clothing, it is competent for a witness, who saw deceased going off with defendant, to testify that the buttons and pieces of clothing so found were the buttons on the coat deceased wore when he left home, and that the articles of clothing were part of the clothing he then wore.

3. *Confessions; admissibility in evidence.*—Where no threats are made to one under arrest charged with a crime, and no inducements are offered him, to induce him to make a confession, and he is not told that it would be better for him to confess, or anything of that kind, statements made by such person relative to his commission of the crime with which he is charged are admissible in evidence as voluntary confessions.

4. *Indictment for murder; sufficiency thereof.*—A count in an indictment for murder, which charges that the defendant "did unlawfully and with malice aforethought kill" a certain named person "by some means to the grand jury unknown," is sufficient, and not subject to demurrer on the ground that it does not sufficiently describe the means by which the homicide was committed.

5. *Reasonable doubt; charge to the jury.*—A charge which instructs

[Newell v. The State.]

the jury "that if a juror, after having heard all of the evidence, feels the desire for more evidence tending to show the guilt of the defendant, * * * that juror has a reasonable doubt of the guilt of the defendant," is erroneous; since the feeling described is not the equivalent of a reasonable doubt.

6. *Homicide; sudden quarrel willingly entered into; charge to the jury.* Because two persons fight willingly and on sudden provocation, it does not necessarily follow that neither entertained malice towards the other in such way as to reduce the homicide to manslaughter; and a charge so instructing the jury is erroneous.

7. *Charge to jury on sufficiency of the evidence.*—A charge in a criminal case which instructs a jury "that before they can convict the defendant the hypothesis of his guilt should be consistent with all the circumstances," asserts an erroneous proposition of law, and is properly refused.

8. *Same.*—In a criminal case, a charge which instructs the jury that they must believe that what one of the witnesses testified the defendant said he did, must have actually been done by defendant, before they can find the defendant guilty, is erroneous and properly refused; especially when there was sufficient evidence to justify a conviction, exclusive of the testimony of the witness referred to.

APPEAL from the City Court of Selma.

Tried before the Hon. J. W. MABRY.

The appellant was indicted and tried for murder, was convicted of murder in the first degree, and sentenced to be hanged.

The indictment was as follows: "The grand jury of said county charge that before the finding of this indictment, Pig Newell, *alias* Mills Newell, *alias* Mills Johnson, did unlawfully, and with malice aforethought, kill Wright Crawford, by shooting him with a gun.

"The grand jury of said county further charge that before the finding of this indictment, Pig Newell, *alias* Mills Newell, *alias* Mills Johnson, did unlawfully, and with malice aforethought, kill Wright Crawford by cutting him with a knife.

"The grand jury of said county further charge that before the finding of this indictment, Pig Newell, *alias* Mills Newell, *alias* Mills Johnson, did unlawfully and with malice aforethought, kill Wright Crawford by burning him up with fire.

"The grand jury of said county further charge that before the finding of this indictment, Pig Newell, *alias* Mills Newell, *alias* Mills Johnson, did unlawfully and with malice aforethought, kill Wright Crawford, by

some means to this grand jury unknown. Against the peace and dignity of the State of Alabama."

The defendant demurred to the fourth count of the indictment upon the ground that it does not sufficiently describe the means by which the deceased was killed. This demurrer was overruled, and the defendant duly excepted. The motion to quash the indictment and the plea in abatement filed by the defendant are set forth at length in the opinion.

The evidence for the State tended to show that the last time that Wright Crawford, the deceased, was seen, he went off with the defendant; that several days after they left, there was found, some distance from where the deceased lived, the bones of a human body in a pile of ashes, and that there were found near this fire some buttons and pieces of under-clothing. The mother of the deceased testified that she had these buttons, and was then asked: "Were they the same buttons deceased had on his clothes when he left?" Defendant objected to this question, because it called for the opinion of the witness, and that the witness should describe the buttons the deceased had worn, and the buttons found, and leave it to the jury to decide if they were the same. The court overruled the objection, and the defendant duly excepted. The witness testified that they were the same buttons. Upon this witness further stating that she found a piece of heavy white under-shirt, she was asked by the State: "Had you ever seen that piece before?" The defendant objected to this question upon the same grounds as were interposed to the other question asked the witness, and duly excepted to the court overruling his objection. The witness answered: "Yes, sir, same shirt my son wore, or same sort of shirt." The witness also testified, against the objection and exception of the defendant, that other pieces of underclothing found at the place where the fire was, were parts of the clothing worn by her son when he went off from home.

Another witness for the State testified that the night before the killing, the deceased and the defendant spent the night at his house, and that while the defendant and he, the witness, were talking, the defendant said to him, among other things, that he was going to shoot the deceased. This testimony was objected to by the defend-

ant, the objection was overruled, and the defendant duly excepted..

Another witness for the State testified that on the day the deceased disappeared, the defendant came to her house, which was about a half mile from where the burning above referred to was, and asked her for some matches, saying that he wanted to smoke ; and that the deceased had blood all over him. There was other evidence for the State that a short time after the killing, the defendant left the neighborhood.

John Golson, a witness for the State, testified that he had the warrant of arrest for the defendant, charging him with killing the deceased, and that in company with one Shelf Hill, he arrested the defendant in Bibb county ; that after the arrest, while he and Hill were carrying the defendant to the house of the man for whom he was working, three men came up and asked him and Hill what they were going to do with the defendant. That he replied that the defendant could speak for himself. The solicitor then asked the witness to state what the defendant said. The defendant objected to this question upon the ground that it had not been shown that the confession, if there was any, was voluntary. Thereupon, in answer to interrogatories propounded, the witness repeated the facts as set out above, and further testified that there were no threats made to the defendant, and no inducements offered him, to get him to make the confession ; that no one told defendant that it would be better for him to confess, or anything like that. That no one drew their weapons on the defendant, or made any demonstrations towards him. Thereupon the court overruled the objection, and allowed the question to be asked. To this ruling the defendant duly excepted. The witness then stated that the defendant said : "I shot him (deceased) with rocks ; and he crawled into the brush ; and I shot him again, in the burr of the ear, and deceased said don't shoot me again any more, go and tell my ma ; and he was not dead ; and I stabbed him and cut him with my knife across the bowels, then I put him in the brush-heap, and burned him all night, and part of him would not burn up ; and I buried it in the morning in a mud hole." There was other evidence tending to connect the defendant with the crime.

[Newell v. The State.]

The defendant as a witness in his own behalf, testified that while he and the deceased were in the woods together, they had a quarrel, and the deceased jumped on him and beat him with his fist; that as he pushed deceased off, the deceased came towards him with a knife, and the defendant knocked him in the head with a piece of wood, and afterwards cut him several times with a knife; but he was not dead when he ran away from him. The defendant denied making the statement to the witness Golson.

The defendant requested the court to give to the jury 17 charges. The court refused to give five of these charges, and to the refusal to give each of them the defendant separately excepted. These five charges were as follows: (2.) "The court charges the jury, that if the juror after having heard all of the evidence feels the desire for more evidence tending to show the guilt of the defendant in any degree of murder, that juror has a reasonable doubt as to the guilt of the defendant in that degree, and he must so find his verdict." (4.) "The court charges the jury, that if two persons, willingly fight, in a sudden quarrel or provocation, and one kills the other, the killing is manslaughter in the first degree." (12.) "The court charges the jury that killing one, who makes an assault with violence, or under circumstances of indignity, as pulling the nose, slapping the face, &c., is manslaughter." (15.) "The court charges the jury that before they can convict the defendant, the hypothesis of his guilt should be consistent with all the circumstances." (16.) "The court charges the jury that they must believe that what the witness, John Golson, stated that the defendant said that he did, must have actually been done by the defendant, before they can find the defendant guilty."

R. P. SAFFOLD, for appellant.—1. The act approved February 24, 1887, amending an act to regulate the drawing and empanelling of grand and petit juries in Dallas county, approved February 14, 1885, is unconstitutional and void, because it amends the aforesaid act approved February 14, 1885, by reference to its title only, and not by re-enacting and publishing at length so much thereof as is revived, amended, extended or conferred, as is required by law. For this reason the

motion to quash the indictment and the venire of jurors and the pleas in abatement should have been sustained. Const., Art. IV, § 2; *Ex parte Pollard*, 40 Ala. 98; *Tuscaloosa Bridge Co. v. Olmstead*, 41 Ala. 9; *Stewart v. County Commissioners*, 82 Ala. 209; *Judson v. City of Bessemer*, 87 Ala. 243; *Bay Shell Road Co. v. O'Donnell*, 87 Ala. 376; *Maxwell v. State*, 89 Ala. 158; *Barnhill v. Teague*, 96 Ala. 207; *Miller v. Berry*, 101 Ala. 531.

The confessions of the defendant were not shown to have been voluntary, and were, therefore, inadmissible. *Wilson v. State*, 84 Ala. 426; *Banks v. State*, 84 Ala. 430; *Sampson v. State*, 54 Ala. 243; *Young v. State*, 68 Ala. 569; 3 Brick. Dig. 285, § 552; *Amos v. State*, 83 Ala. 1; *Jackson v. State*, 83 Ala. 76.

The 4th charge requested by the defendant asserted a correct proposition of law, and should have been given. *Cates v. State*, 50 Ala. 166. The 15th charge requested by the defendant should have been given.—*Gilmore v. State*, 99 Ala. 154.

WILLIAM C. FITTS, Attorney-General, for the State.

COLEMAN, J.—The defendant was indicted, tried and convicted of murder in the first degree, and sentenced to suffer the penalty of death. By motion and plea, the defendant attempted to raise the question of the legality of the organization of the grand jury which preferred the indictment, and of the special *venire*, summoned to try him. The court sustained a demurrer to to the motion, and also to the plea. The motion reads as follows: "And here comes the said Pig Newell, by attorney, and moves to quash the indictment, because the act approved February 25, 1887, (under which the grand jury who found this indictment were drawn and summoned), amending an act to regulate the drawing and empanelling of grand and petit juries in Dallas county, approved February 14, 1885, was unconstitutional and void, because it amends the aforesaid act approved February 14, 1885, by reference to its title only, and not by re-enacting and publishing at length so much thereof as is revived, amended, extended or conferred, as is required by law."

The plea reads as follows: "And here comes the said Pig Newell, by attorney, and pleads and says that the

[Newell v. The State.]

said State ought not to prosecute further the said indictment against him, because he says, that the act approved February 24, 1887, (under which the grand jurors who found this indictment were drawn and summoned), amending an act to regulate the drawing and empanelling of grand and petit juries in Dallas county, approved February 14, 1885, was unconstitutional and void, because it amends the aforesaid act approved February 14, 1885, by reference to its title only, and not by re-enacting and publishing at length so much thereof as is revived, amended, extended or conferred, as is required by law.''

The demurrers are not set out in the record. This being the condition of the record, we must presume, that the demurrer pointed out the defect in the motion and plea, if they were subject to demurrer on any grounds. We are of the opinion, that both the motion and plea were defective and subject to demurrer. Both are based upon the legal conclusion of the pleader, instead of facts. It is not pretended that the act of February 14, 1885, is unconstitutional and void. This act of February 14, 1885, is complete in itself, and provides for the drawing and empanelling of grand and petit juries in Dallas county. There is nothing in the record of appeal which supports the contention, that the grand jury or special venire were drawn, summoned or empanelled, under the act of February 24, 1887, (Acts of 1886-87, p. 209), and not under and by virtue of the previous act.—Acts of 1884-85, p. 492. The last act (1886-87) does not repeal the provisions of the act of 1884-85. These provisions are in force and regulate the drawing and empanelling of grand and petit juries; and if it be conceded, a question we do not decide, that the act of 1886-87 is unconstitutional, in order to properly raise the question attempted to be raised, facts should have been averred in the motion and plea, which showed that the grand jury and special *venire* were drawn, summoned and empanelled under the latter act. The conclusion of the pleader is not sufficient. The demurrers were properly sustained.

There was no error in permitting the witness to testify, that the buttons and pieces of cloth found, belonged to deceased, and were worn by him when last seen alive.

The credibility of the witness, and extent of her information, could have been tested by cross-examination.

The confessions were clearly admissible.—*Burton v. State*, 107 Ala. 108.

The court did not err in overruling the demurrer to the indictment.—*State v. Tempe*, 40 Ala. 350 ; Cr. Code of 1886, §§ 4377, 4378.

There was no error in refusing the charges requested by the defendant. No. 2 has been expressly condemned. *Shepperd v. The State*, 94 Ala. 102. Charges numbered 4 and 12 are objectionable for many reasons. It does not follow that because parties fight willingly and on sudden provocation, that neither entertains malice against the other. These charges direct the attention of the jury to the origin of the difficulty as stated by him when testifying in his own behalf, and ignore all the evidence of previous threats, and a premeditated and executed assassination. Charge 15 is incomplete, and asserts an erroneous proposition of law. There may be inconsistency in some of the testimony, and yet sufficient proof to justify a conviction of guilty, as demonstrated on the trial of this case. Charge 16 was properly refused. There was sufficient evidence to justify a conviction, without reference to the testimony of Golson.

We find no error in the record.

It appearing that the day appointed by the trial court for the execution of the sentence, has passed, it is ordered that the 30th day of July, 1897, be, and is hereby specified as the day for the execution of the sentence.

Affirmed.