# Bates v. The State.

*Indictment for Murder.*

1. *Constitutional law; amendment of jury law.*—The act approved February 24, 1887, entitled "An act to amend an act to regulate the drawing and impanelling of grand and petit juries in Dallas county, approved February 14, 1885," (Acts of 1886-87, p. 209), is unconstitutional and void, as violative of section 2, Article IV of the Constitution, providing that no law shall be amended by reference to its title only, but so much thereof as is amended, shall be re-enacted and published at length; said act being purely amendatory and not setting out all the section of the original act sought to be amended.

APPEAL from the City Court of Selma.

Tried before the HON. J. W. MABRY.

The appellant, Jonas Bates, was indicted, and tried for the murder of one Henry Randall, was convicted of murder in the second degree, and sentenced to the penitentiary for 99 years.

Upon the cause being called for trial, the defendant moved to quash the indictment upon the following ground: "That the grand jury which found this said indictment was not drawn as required by law, in this:

That the jury commissioners of Dallas county in filling the jury box from which the names of the persons composing said grand jury was drawn, did not cause to be prepared slips of plain white paper of the same size and texture, and did not write the name, occupation and place of residence of said jurors on said slips of plain white paper, and did not fold or roll up said slips, one by one, and place them in said box, as is required by the act to regulate the drawing and impannelling of grand and petit juries in Dallas county, approved February 14, 1885, (Acts, 1884-85, page 492) ; but said jury commissioners in filling said box, wrote the names, occupation and residence of said jurors on slips of white card or white card board of the same size and texture, and placed said slips of card or card board in said jury box, without folding or rolling up said slips. And the defendant says that the jury commissioners in filling said jury box from which the names of the said grand jurors were drawn were following the provisions of the act approved February 24th, 1887, (Acts, 1886-87, page 209), which said act approved February 24th, 1887, is unconstitutional and void in that it changes, amends or extends the aforesaid act of February 14, 1885, by reference to its title only, and not by re-enacting and publishing at length so much thereof as is 'revised, amended, extended or conferred,' as is required by law; and defendant says that the names of the persons composing said grand jury were drawn from said box, so filled by the jury commissioners, as above set out, under said void act of February 24th, 1887. Wherefore defendant moves to quash said indictment."

To this motion the State demurred upon the following grounds : 1st. That said motion fails to show that the grand jury which found said indictment was not drawn in the presence of the officers designated by law. 2d. That it does not appear from said motion that the grand jury which found said indictment was not drawn by the jury commissioners of Dallas county as required by law. 3d. It appears from the motion that the grand jury was drawn in accordance with the statute in such cases made, and provided. This demurrer was sustained and the defendant excepted.

Thereupon the defendant filed a plea in abatement upon the same grounds as his motion to quash the indictment was based. To this plea the State demurred and assigned as grounds of demurrer the same as were assigned to the motion to quash the indictment. This demurrer was sustained, and the defendant duly excepted. The defendant filed a motion to quash the venire upon the same grounds, and the demurrer assigning the same grounds was sustained to this motion. To this ruling the defendant duly excepted. These rulings present the only questions reviewed on the present appeal.

GEORGE H. CRAIG and A. L. McLEOD, for appellant.— Section 2, Article IV of the Constitution is mandatory. *Harper v. State,* 109 Ala. 28; *Randolph v. B. & P. Supply Co.,* 106 Ala. 507; *Stewart v. Court County Commissioners,* 82 Ala. 209; *Stein v. Leeper,* 78 Ala. 517; *Ballentyne v. Wickersham,* 75 Ala. 536.

The statute under which the grand jury which preferred the indictment in this case was drawn, was purely an amendatory statute; and it did not set out at length the section of the original statute sought to be amended. Said section was, therefore, violative of section 2, Article IV of the Constitution and void. *Ex parte Pollard,* 40 Ala. 98; *Tuscaloosa Bridge Co. v. Olmstead,* 41 Ala. 9; *Judson v. City of Bessemer,* 87 Ala. 243; *Bay Shell Road v. O'Donnell,* 87 Ala. 376; *Barnhill v. Teague,* 96 Ala. 207; *Maxwell v. State,* 89 Ala. 156; *State v. Rogers,* 107 Ala. 444.

WILLIAM C. FITTS, Attorney-General, for the State.

HARALSON, J.—The first section of the act of February 14, 1885, (Acts, 1884-85, p. 492), provides, "That the jury commissioners of Dallas county, the judge of probate and the clerk of the circuit court of said county, shall meet in the office of the clerk of said court on the first Monday in January, 1885, or whenever the jury box is found to contain less than 100 names, or as soon thereafter as practicable, and the said commissioners, under the direction of said probate judge, shall make a list or roll of every male citi-

zen living in said county, who possesses the qualifications hereinafter prescribed, and who is not herein specifically exempted from serving on juries. The said roll shall be arranged alphabetically, and said commissioners shall write on said roll opposite every name placed thereon, the occupation and residence of said person. Upon the completion of said roll, said commissioners shall cause to be prepared slips of plain white paper of the same size and texture and shall write on said slips the name, occupation and place of residence of said person whose name has been placed on said roll, writing but one person's name, occupation and residence on one slip, and shall fold or roll up said slips one by one, and place them in a substantial wooden or tin box, provided with a lock and key, which said box shall be kept in the safe in the office of the clerk of the circuit court of Dallas county, and the key thereof to be kept by the probate judge, who shall not allow it to be [kept] by any person except himself in his own proper person."

On the 24th of February, 1887, (Acts, 1886-87, p. 209), the legislature passed another act amendatory of this act, entitled "An act to amend an act to regulate the drawing and impanelling of grand and petit juries in Dallas county, approved February 14th, 1885," the first section of which reads: "That upon the completion of the roll required to be made by section 1 of the above entitled act, said commissioners shall cause to be prepared slips of plain white paper or of white card, or of white card board, of the same size and texture, and shall write or print on said slips or cards the full name, occupation and place of residence of said person whose name has been placed on said roll, writing but one person's name, occupation and residence on one slip or card. Said slips or cards shall not be folded or creased, and shall be placed in a substantial wooden or tin box, provided with a lock and key, which box shall be kept in a safe in the office of the clerk of circuit court of Dallas county, and the key thereof to be kept by the probate judge, who shall not allow it to be used or kept by any person except himself in his own proper person, or in his absence, as provided in section 16 of said act, by the judge of the city court of Selma."

Section 2 of Article IV of the Constitution provides: "No law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only, but so much thereof as is revived, amended, extended or conferred, shall be re-enacted and published at length."

The constitutions of this State of 1865, 1868 and 1875 contain practically the same provision, which under each, has been held to be mandatory. The slight difference in phraseology has not caused any difference in construction; the clause in each being deemed significant of the same purposes and objects, and each having the same operation.

In the motion in this case to quash the indictment, facts are averred which show that the jury commissioners in filling the jury box, and in drawing therefrom the persons who composed the grand jury which found the indictment in this case, followed the act of 1887, and not the act of 1885; and the plea in abatement avers the same facts. The court sustained the demurrers of the State to the motion and plea. We have thus presented as raised, as the only question for review, the constitutionality of said amendatory act of 1887.

In *Ex parte Pollard*, 40 Ala. 100, it was said, in construing this provision, as it appeared in the Constitution of 1865: "It was never intended by the Constitution that every law which would affect some previous statute of variant provisions on the same subject, should set out the statute or statutes so affected at full length. If this were so, it would be impossible to legislate. The constitutional provision reaches those cases where the act is strictly amendatory or revisory in its character. Its prohibition is directed against the practice of amending or revising laws by additions, or other alterations, which without the presence of the original are usually unintelligible. If a law is in itself complete and intelligible, and original in form, it does not fall within the meaning and spirit of the Constitution."

In the case of the *Tuscaloosa Bridge Co. v. Olmstead,* 41 Ala. 1, the court construed the "act to amend an act, entitled an act to incorporate a company to build a

bridge across the Warrior river, opposite the city of Tuscaloosa, approved January 2nd, 1833." Section 1 of the amendatory act provided, "That the above recited act be amended, by additional sections numbered and worded as follows, which additional sections shall, for all purposes be deemed and held as a part of the original act, to the same extent, and in the same manner, as if the same had been incorporated therein at the time of its passage." Then following sections 11, 12 and 13. The court held that the act in its form was amendatory, not original; that it was placed in the legal attitude of being incorporated in additional sections in the original act; that its full effect could not be determined, without reference to the original act, as the entire operation of the provisions of the act could not be safely pronounced, without an examination of the other, with which, as parts of a whole, they are to be compared and construed. Referring with approval to what was said in *Ex parte Pollard,* 40 Ala. 98, *supra,* it was said, that "a judicial exclusion of such an act from the prohibition of the Constitution, would practically disregard its mandate."

In *Gandy v. The State,* 86 Ala. 20, the construction of the Constitution as given in the case of *Ex parte Pollard,* as quoted above, was approved as the proper construction of that section.

Our last and, perhaps, fullest utterance on the subject may be found in the recent case of *The State v. Rogers,* 107 Ala. 444, where the authorities are reviewed, and the construction given to the clause of the Constitution under consideration in *Ex parte Pollard,* was adhered to as the proper one. What was said by COOLEY, J., in *People v. Mahaney,* 13 Mich. 481, is quoted and approved, namely, that, "This constitutional provision must receive a reasonable construction, with a view to give it effect. The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effect, and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the law. An amendatory act, which purported only to insert certain words, or to substitute

one phrase for another in an act or section which was only referred to but not republished, was well calculated to mislead the careless as to its effect, and was, perhaps, sometimes drawn in that form for that express purpose. Endless confusion was thus introduced into the law, and the Constitution wisely prohibited such legislation."

From the foregoing principles we may readily determine the character of the act under review. It is not independent and original in form, but is purely amendatory, as its title quoted above declares it to be. The amendatory act does not recite or set out the original section of the act sought to be amended, nor was this necessary, if that section as amended was set out in full and published at length as revised and amended, in the amendatory act.—*Montgomery v. The State,* 107 Ala. 372; *Ex parte Pollard, supra;* Cooley's Const. Lim. 182. This amendatory act does not set forth and publish at length the section of the original act sought to be amended. Its title is general, broad enough, it is true, to admit under it any proper amendment of the original, but it is blind as to any particular section or part of the original designed to be amended. The amendment is sought to be made by reference to the title merely, of the act to be amended. Section 1 of the later act, without referring to the section of the original to be amended, except by reference thereto in its own title, so that it might be understood from the amendment itself what is done, starts out independently, *in medias res:*—"That upon the completion of the roll required to be made by section 1 of the above entitled act, said commissioners shall cause to be prepared," etc. What roll is here referred to? Who are the commissioners, and what have they done up to the point of preparing "slips of white paper or of white card or of white card-board of the same size and texture," as they are required to do in the proposed amendment? The amendatory act does not anywhere disclose, and resort must be had to the original to understand and give meaning and sense to the amendment. Without this, the amendment is unintelligible. There are 26 lines of section 1 of the original act, as it appears in the pamphlets; and this proposed amendment

[Burton v. The State.]

commences amending that section in the middle of the 14th line from the beginning. The last half of that original section is amended and published at length, but the first half remains as it was in the original, preserved as a necessary foundation for the proposed amendment. It is only by taking this amendment and tacking it on to the first half of the original, that meaning and operation can be given to the latter, thus requiring the statutes as published in two separate books, to be tacked in order to give operative effect to the latter, proposing to amend the former. This is violative of that provision of the Constitution, which, according to reason and authority, "is directed against the practice of amending or revising laws by additions, or other alterations, which without the presence of the original are usually unintelligible."

It may be added that the said act of 14th February, 1885, was not repealed by the act of 1887.—*Newell v. The State*, 115 Ala. 54.

Reversed and remanded.