Manuel Ray RUA, Jr., a/k/a John T. Welk, Appellant,

v.

UNITED STATES of America, Appellee.

No. 20178.

United States Court of Appeals Fifth Circuit.

Aug. 5, 1963.

Rehearing Denied Sept. 12, 1963.

Robert King High, Kenneth L. Ryskamp, Charles R. Stack, High, Stack & Davis, Miami, Fla., for appellant.

Alfred E. Sapp, Asst. U. S. Atty., Miami, Fla., Edith House, U. S. Atty., Southern Dist. of Florida, for appellee.

Before RIVES, CAMERON and HAYS,* Circuit Judges.

HAYS, Circuit Judge.

Defendant appeals from a judgment of conviction for possession and concealment of counterfeit Federal Reserve notes with intent to defraud. 18 U.S.C. § 472. Appellant urges that the indictment was fatally defective in that it failed to charge specifically that he knew of the counterfeit nature of the notes, and that the evidence was insufficient to show an intent to defraud. We find appellant's points without merit and therefore affirm.

* Of the Second Circuit, sitting by designation.

The indictment included nine counts: counts one through five, and seven charged the defendant with fraudulently passing counterfeit notes on or about August 26 and 27, 1962; counts six, eight and nine charged that the defendant "did, with intent to defraud, conceal and have in his possession falsely made and counterfeited obligations and securities of the United States \* \* \*" on or about August 26, 27 and 28 respectively. Rua was acquitted on counts one through eight, and convicted on count nine.

Appellant first urges that count 9 is fatally defective in that it fails to charge, in specific language, that he had knowledge of the counterfeit nature of the bills. He relies on United States v. Carll, 105 U.S. 611, 26 L.Ed. 1135 (1881), and Hill v. United States, 275 F. 187 (7th Cir. 1921). While these cases do support the appellant's contention, both were decided long prior to the enactment of the Federal Rules of Criminal Procedure. Rule 2 provides:

"These rules are intended to provide for the just determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay."

Rule 7(c) provides:

"The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged."

■ The Rules were "designed to eliminate technicalities in criminal pleading and to simplify procedure." Contreras v. United States, 213 F.2d 96, 99 (5th Cir. 1954). See Harris v. United States, 288 F.2d 790 (8th Cir. 1961); Neville v. United States, 272 F.2d 414 (5th Cir. 1959), cert. denied, 362 U.S. 924, 80 S.Ct. 678, 4 L.Ed.2d 743 (1960); Roberson v. United States, 237 F.2d 536 (5th Cir. 1956); McKinney v. United States, 172 F.2d 781 (9th Cir. 1949). "Convictions are no longer reversed because of minor and technical deficiencies [in the charging papers] which did not prejudice the accused. E. g., Hagner v. United States, 285 U.S. 427 [52 S.Ct. 417, 76 L.Ed. 861]; Williams v. United States, 341 U.S. 97 [71 S.Ct. 576, 95 L.Ed. 774]; United States v. Debrow, 346 U.S. 374 [74 S.Ct. 113, 98 L.Ed. 92]." Smith v. United States, 360 U.S. 1, 9, 79 S.Ct. 991, 996, 3 L.Ed.2d 1041 (1959).

In Hagner v. United States, supra, the Court said:

"The rigor of old common law rules of criminal pleading has yielded, in modern practice, to the general principle that formal defects, not prejudicial, will be disregarded. The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offence, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.'"

285 U.S. at 431, 52 S.Ct. at 419 (1932).

■ In the present case, the indictment charged the defendant, in the words of the statute, with "intent to defraud." Such an intent could hardly exist unless the defendant knew of the counterfeit nature of the bills. Harris v. United States, supra; McKinney v. United States, supra. The record shows that the case was tried throughout on the theory that knowledge was an element of the crime, and that all parties so understood. Indeed no attack of any kind was made on the indictment in the court below. There is no claim nor any ground for finding that appellant was in any way misled or otherwise prejudiced. Appellant's first contention is wholly without merit.

Appellant next urges that the evidence was insufficient to sustain the conviction on count nine, which charged possession of 12 counterfeit notes with intent to defraud on August 28, 1962.

The undisputed evidence showed that sometime prior to August 26, 1962, the defendant Rua came into possession of a substantial number of counterfeit $100 notes. Enlisting the aid of a friend[1] Rua passed at least five of these notes on Sunday, August 26.

The witness Colosi testified that at 6:00 o'clock in the morning on Monday, August 27, Rua approached Colosi and told him that he, Rua, had some counterfeit money, that Colosi could get some too, and that they could make money together. Colosi declined the offer.

Later that morning Rua passed a note at a liquor store, and then attempted to pass another bill at another store. There the manager refused to accept the note, suggesting to Rua that it was counterfeit. Rua stated that he would take it to the bank, and promptly did so.

At the bank Rua inquired whether the note was good, and was informed that it was not. With Rua's consent the note was confiscated. The bank also called the Secret Service, and Rua told an agent of the Service on the telephone that he had received the note from a customer on his milk route, and that he had no more counterfeit notes.

Leaving the bank, Rua returned to the liquor store where he had passed the note that morning, informed the manager that the note was counterfeit, and recovered the note, giving the manager $100 in cash and a money order.

On the afternoon of the next day, August 28, Secret Service agents questioned Rua again. Rua again denied that he now had or ever had had any more counterfeit notes, but agreed to accompany the agents to the establishments where similar notes had been passed on Sunday. At these places Rua was identified, over his continued denials, as the man who had passed the notes on Sunday. Finally, late in the afternoon on the 28th, Rua agreed to tell the agents the "whole story." His statement admitted the events we have set forth, with the exception of the alleged conversation with Colosi. Rua claimed that he had found the money on August 25 and thought it was either lost or stolen, but did not know it was counterfeit. He stated that he still had twelve notes which he had given to someone else to keep, and that he would have them delivered to the Service. (It was for possession of these notes on this day that the defendant was convicted). The notes were, in fact, turned over to the authorities by defendant's counsel several days later.

At the trial the defendant testified in his own behalf and in substance corroborated the description of events which he had previously given to the Service.[2]

The jury acquitted the defendant of counts one through eight, relating to Sunday and Monday, August 26 and 27, and convicted him of possession of 12 counterfeit notes with intent to defraud on Tuesday, August 28.

The government argues that the evidence was sufficient to sustain the conviction because the defendant admitted possession of the twelve notes on August 28, but did not turn them over until several days later. "This shows", the government says, "the possession of the bills, and the reckless passing of the other bills shows the intent to defraud."

---

1. The co-defendant Johl, who was acquitted on all counts.

2. He added that on discovering on the 27th that the notes were counterfeit, he had redeemed the only note he had passed that day. He did not attempt to redeem the notes he had passed on Sunday partly because he did not completely remember where he had passed them and partly because businesses in the area made their bank deposits on Monday mornings, and it was therefore pointless on Monday to attempt to secure the return of the notes. Rua added that he had been particularly careful in breaking the bills because he was on parole, and did not want to get into trouble by being seen with large quantities of money. His initial denials to the Service were motivated by a similar fear of "getting into trouble." He denied the alleged conversation with Colosi on the morning of August 27, and claimed that about a week before he and Colosi had had an altercation over a waitress in Colosi's restaurant.

If we were compelled to accept the government's theory of the case we would be constrained to reverse. For it is obvious that once the defendant admitted possession of the twelve notes to the authorities, and promised to turn them over, he could no longer have harbored an intent to pass or use them, i. e., an intent to defraud. His alleged "reckless passing of the other bills" on an earlier date is unavailable to establish intent to defraud because the defendant was acquitted with regard to those days.

The record reveals, however, that early in the afternoon of August 28, before making the admissions relied on by the government, the defendant *denied* to the agents that any counterfeit notes remained in his possession. The jury could have found that Rua concealed his possession so that he could fraudulently pass these notes in the future. On this theory the verdict can be sustained. See United States v. Petrone, 185 F.2d 334 (2d Cir. 1950), cert. denied, 340 U.S. 931, 71 S.Ct. 493, 95 L.Ed. 672 (1951).

We are required to uphold the verdict if there is any theory of the evidence on which the jury could properly have reached that verdict.

"[A] successful party in the District Court may sustain its judgment on any ground that finds support in the record."

Jaffke v. Dunham, 352 U.S. 280, 281, 77 S.Ct. 307, 308, 1 L.Ed.2d 314 (1957). See United States v. Meyer, 266 F.2d 747, 756 (5th Cir.), cert. denied Kennedy v. United States, 361 U.S. 875, 80 S.Ct. 138, 139, 4 L.Ed.2d 113 (1959).

We are not called upon to speculate as to the grounds upon which the jury proceeded. That the government has chosen to rely upon a theory which is untenable cannot foreclose us. We must assume that the jury's verdict rests upon a finding of facts which will sustain the verdict where, as here, the record discloses that there is evidence which would support such a finding.

It may be objected that the ground on which we affirm the conviction must lead to the conclusion that the jury's verdict was inconsistent. It is difficult to escape this conclusion since the appellant, by his own admission, also denied possession on August 27 and the jury acquitted him on the count referring to that day. A sufficient answer to the objection of inconsistency is found in Dunn v. United States, 284 U.S. 390, 393, 394, 52 S.Ct. 189, 190, 191, 76 L.Ed. 356 (1932) where the Court said:

"Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment. * * *

"That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters."

The conviction is affirmed.