MADDOX, Justice.
On August 16, 1970, Charles Ray Lovett disappeared from his home in Decatur. Skeletonized remains were unearthed in Sanford, Florida on December 6, 1977. These remains were subsequently determined to be consistent with Lovett by comparisons made by a forensic odontologist, Dr. Richard Souviron. The defendant, Glenn Dolvin, was indicted and convicted for the first degree murder of Lovett. The Court of Criminal Appeals reversed that conviction, finding that the evidence was insufficient "to connect the defendant with the killing of Lovett. . . ." Dolvin v. State, 391 So.2d 129
(Ala.Cr.App. 1979). The Court of Criminal Appeals, in its opinion, set out the evidence presented by the State to connect the defendant with the crime, as follows:
The prosecution began its case by proving a motive for the murder. Morgan County Circuit Clerk Cleo Teague took the stand and testified that in March, 1970 Appellant was indicted for grand larceny of Charles Ray Lovett's automobile; Lovett was listed on the back of the indictment as a witness for the State and Lovett's address was also shown on the indictment. Moreover, at the time of Lovett's disappearance the grand larceny charge against Appellant was still pending.
The testimony of J.R. Garrett showed that Appellant was in the State of Alabama during the months of July-August, 1970. In early August Garrett observed Appellant proceeding with a piece of paper in his hand to Freemont Street where Lovett resided; Appellant glanced up and down the street as if trying to ascertain precisely where Lovett lived, then turned and left.
Rickey Hames stated that on August 16, 1970, the day of Lovett's disappearance, Appellant came to a service station and asked for directions to Freemont Street. Hames showed Appellant a city map. Hames further stated that Freemont Street and the service station were in the same neighborhood.
Prior testimony of James Howell Legg, who was deceased at the time of the murder trial, was also introduced. Legg stated that he was at his service station on August 16, 1970, and that he saw the Appellant there between 4-6 p.m. Legg never wavered in his certainty that it was Appellant he had seen that day. *Page 135 
Several of the victim's neighbors were called to the witness stand. Mr. Sherlon Nagy was the next-door neighbor of the Lovetts and last saw him on August 16, 1970, at 8:30 p.m.
Mrs. Betty Third stated that after she had gone to bed around 10:30 p.m. on August 16, 1970, she heard someone shout, "help, help, let me go" and there was a loud noise.
Mrs. Third looked out the window and saw a Volkswagen moving slowly past the Lovett residence and a man walking around her house. On cross-examination Mrs. Third testified that she heard a loud noise which could have been a car backfiring. Mrs. Third was unfamiliar with guns.
Mr. Henry David Hardiman heard a loud noise on August 16, 1970, sometime after 9:30 p.m. He woke up and looked out the window. Although he did not see anyone, he noticed that his barbecue grill had been knocked over. Mr. Hardiman did not know whether or not the loud noise he heard was a shotgun blast.
Miss Debbie Garrett testified that on August 16, 1970, she lived on Freemont Street and her mother worked at a nearby convenience store. On the night in question Miss Garrett was with her mother at the store and at around 10:30 p.m. she went outside the store to lock up the ice machine. At this time Miss Garrett saw a woman driving a dark green Volkswagen with its headlights off. Miss Garrett got a magazine from the store and sat in her mother's car. During this time she watched the woman and saw her make two trips to Freemont Street. The second time the woman sat there a minute, then Miss Garrett heard a shout. The woman then drove down the back alley at a fast speed. The automobile was out of Miss Garrett's sight for around ten seconds, then she saw it again. This time the headlights were on and Miss Garrett saw two additional men in the car with the woman. One man was slumped down in the seat and the other had his back to Miss Garrett. Miss Garrett identified the driver of the automobile as Sue Dolvin, wife of the Appellant.
The victim's wife then took the stand. She talked to her husband by telephone around 10:00 p.m. on August 16, 1970. That was the last she ever heard from the victim.
After talking to her husband Mrs. Graves (sic) went outside the Dairy Queen to take out some trash. When she opened the door she saw a green Volkswagen parked almost directly in front of the door. A man was in the driver's seat and a woman was on the passenger side. The woman stared at her and was identified as Mrs. Sue Dolvin.
Mrs. Graves (sic) further testified that the victim had never had any dental work but that he had a dark stain on his bottom teeth. To her knowledge he had a perfect set of teeth and had had no fillings or tooth extractions.
Mr. Robert E. Hancock of the Alabama Department of Public Safety testified that in his investigation of the victim's disappearance he went to the Dolvins' residence in Key West, Florida. Outside he observed an old green Volkswagen with an application for replacement tag stuck to the rear window. A Florida search warrant was obtained and a brown paper bag and map were taken from the luggage compartment of Mrs. Dolvin's car. The items were sent off to the FBI laboratory in Washington, D.C.
Mr. Alison Sims of the FBI stated that he tested the bag and map for blood stains. Although he was able to detect human blood stains on both items, the particular blood type could not be determined.
Mr. Robert Quackenbos stated that he managed the trailer park where the Dolvins lived. In August, 1970, Quackenbos lived next door to the Dolvins. Although his bedroom was located next to the road and he was being very watchful because of vandalism problems, at no time did he hear the Dolvins go in their trailer during the weekend of August 16, 1970. Moreover, the Volkswagen was gone the entire weekend. The Dolvins' daughter stayed at the Quackenbos' trailer during part of that weekend.
Florida State Trooper Clarence Lee Simpson was on duty in Ocala, Florida, in the *Page 136 
early morning hours of August 18, 1970. Around 1:00 a.m. Sue Dolvin came in the Highway Patrol Station and signed a lost tag form. Mrs. Dolvin had smudges on her and her fingernails and clothes were dirty. She appeared as if she had been camping in the woods.
David Sandlin was the Sheriff of Morgan County in August, 1970. He drove to Key West, Florida, after Appellant waived extradition in order to return Appellant to Morgan County, Alabama. Sandlin noticed that Appellant had a black eye.
John Cardi, a construction worker in Sanford, Florida, discovered some bones at a construction site in December, 1977. Police investigators were called to the scene.
Chad Barton, an investigator with the Sanford, Florida, Sheriff's Department investigated the skeletal remains discovered by Cardi. A shotgun pellet and wadding were found in the remains; sixteen pellets believed to be lead in content were also removed from the chest cavity.
Barton personally flew the skeletal remains to Dr. Joseph H. Davis, the Chief Medical Examiner in Miami, Florida.
Dr. Davis examined the remains and determined them to be those of a caucasian male in his mid-twenties at the time of death. It was Davis' opinion that the victim had not died of suicide or natural or accidental causes. Davis stated that he would classify the victim as a probable homicide as a result of a gunshot wound.
The bones had been buried from 1-10 years.
Dr. Richard Souviron, a forensic odontologist, assisted Dr. Davis in examining the teeth found along with the skeleton. Dr. Souviron determined that the teeth were those of a caucasian male between the ages of twenty-five and thirty-five. The teeth appeared to be perfect, with no cavities, fillings or apparent orthodontal work. Also noted was a dark stain along the gum line. Souviron stated that a set of perfect teeth was very rare.
Souviron was given photographs of the victim and enlargements were made. Comparing the remains with the photograph Souviron found the formation and angle of the lower jaw to be consistent with the victim's. Souviron further found the upper jaw to be consistent with the victim's.
In sum, based on fourteen points of comparison, Souviron found nothing inconsistent between the photographs and the remains of the victim and it was his opinion that the skeletal remains were indeed those of Charles Ray Lovett.
From the foregoing summary of evidence put on by the State there can be no question but that sufficient evidence was produced to send the case to the jury. First, Appellant clearly had a motive for killing Lovett in order to prevent him from testifying against him on a criminal charge.
Furthermore, before Lovett disappeared Appellant was seen glancing around Freemont Street with a piece of paper in his hand.
More importantly, on the afternoon of Lovett's disappearance two eye witnesses placed Appellant at a service station a mile from Lovett's home and Appellant specifically asked one of the attendants for directions to Freemont Street.
Moreover, the victim's wife pinned down Lovett's disappearance to between 10:00-11:00 p.m. on August 16, 1970. At around 10:30 p.m. Mrs. Betty Third, a neighbor, heard a voice crying, "Help, help, let me go," then heard a loud noise. When she looked out the window she saw an automobile of the same make as Appellant's wife's car moving slowly past the Lovett residence.
Another neighbor, Henry David Hardiman, also heard a loud noise on the night in question around 10:30 p.m. Neither Mrs. Third nor Hardiman knew if the loud noise was a gunshot.
Further evidence against Appellant was provided by Miss Debbie Garrett, who on the night of the disappearance observed Appellant's wife driving around Freemont Street with no headlights on and then speeding back down there where a cry for help was heard. At this point Mrs. Dolvin took off in a hurry and when she passed by Miss Garrett, there were two other men in the car, one of whom was slumped over. *Page 137 
Further evidence of the joint participation of the Dolvins was provided by the victim's wife, who observed Sue Dolvin and a man parked in front of the Dairy Queen where Mrs. Graves (sic) worked. Although Mrs. Dolvin stared at her, Mrs. Graves (sic) was unable to see the man's face clearly.
Later items stained with human blood were found in the automobile owned by Mrs. Dolvin.
When Appellant and his wife were later seen by law enforcement officials, Appellant had a black eye and Mrs. Dolvin looked as though she had gotten dirty in the woods.
The Court of Criminal Appeals correctly held that circumstantial evidence alone may be sufficient to prove the accused's commission of or participation in the killing, but concluded that the evidence presented by the State was insufficient.
The Court of Criminal Appeals correctly cited Kimmons v.State, 343 So.2d 542 (Ala.Cr.App. 1977), as standing for the proposition that "the mere presence of a person at the time and place of a crime is not sufficient to justify his conviction for the commission of the crime." That court omitted, however, to state that if presence at the time and place a crime is committed, in conjunction with other facts and circumstances, tend to connect the accused with the commission of the crime, then the jury may find the accused guilty. In Kimmons, the court said:
 A more proper and correct statement of the rule is that the fact that at or about the time of the commission of the offense with which the accused is charged, he and the accomplice were together, in or near the place where the crime was committed, may, in conjunction with other facts and circumstances, sufficiently tend to connect the accused with the commission of the crime to furnish the necessary corroboration of the accomplice.
This Court has stated the rule as follows:
 Circumstantial evidence alone is enough to support a guilty verdict of the most heinous crime, provided the jury believes beyond a reasonable doubt that the accused is guilty. Lowe v. State, 90 Fla. 255, 105 So. 829 (1925). Circumstantial evidence is said to be the inference of a fact in issue which follows as a natural consequence according to reason and common experience from known collateral facts. Lowe, supra.
White v. State, 294 Ala. 265, 272, 314 So.2d 857, cert. denied,423 U.S. 951, 96 S.Ct. 373, 46 L.Ed.2d 288 (1975).
In reviewing the sufficiency of the evidence, we think the Court of Criminal Appeals did not correctly apply the test set out in Cumbo v. State, 368 So.2d 871, 874 (Ala.Cr.App. 1978), although we note that the court cited that case. In Cumbo, the court said:
 In reviewing a conviction based on circumstantial evidence, this court must view that evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. United States v. Black, 497 F.2d 1039 (5th Cir. 1974); United States v. McGlamory, 441 F.2d 130
(5th Cir. 1971); Clark v. United States, 293 F.2d 445
(5th Cir. 1961).
 (W)e must keep in mind that the test to be applied is not simply whether in the opinion of the trial judge or the appellate court the evidence fails to exclude every reasonable hypothesis but that of guilt; but rather whether the jury might so conclude. Harper v. United States, 405 F.2d 185 (5th Cir. 1969); Roberts v. United States, 416 F.2d 1216 (5th Cir. 1969). The procedure for appellate review of the sufficiency of the evidence has been aptly set out in Odom v. United States, 377 F.2d 853, 855 (5th Cir. 1967):
 Our obligation, therefore, is to examine the record to determine whether there is any theory of the evidence from which the jury might have *Page 138 
excluded every hypothesis except guilty beyond a reasonable doubt. Rua v. United States, 5 Cir., 1963, 321 F.2d 140; Riggs v. United States, 5 Cir., 1960, 280 F.2d 949. In Judge Thornberry's words, * * * the standard utilized by this Court is not whether in our opinion the evidence and all reasonable inferences therefrom failed to exclude every hypothesis other than guilt, but rather whether there was evidence from which the jury
might reasonably so conclude. Williamson v. United States, 5th Cir., 1966, 365 F.2d 12, 14. (Emphasis supplied).
 The sanctity of the jury function demands that this court never substitute its decision for that of the jury. Our obligation is to examine the welter of evidence to determine if there exists any reasonable theory from which the jury might have concluded that the defendant was guilty of the crime charged. McGlamory, 441 F.2d at 135 and 136.
 See also Blair v. State, 18 Ala. App. 615, 93 So. 45
(1922). Whether circumstantial evidence tending to connect the defendant with the crime excludes, to a moral certainty, every other reasonable hypothesis than that of the defendant's guilt is a question for the jury and not the court. Cannon v. State, 17 Ala. App. 82, 81 So. 860 (1919); see also Evans v. State, 39 Ala. App. 404, 408, 103 So.2d 40, cert. denied, 267 Ala. 695, 103 So.2d 44 (1958).
 Circumstantial evidence may afford satisfactory proof of the corpus delicti in a murder prosecution, and, if facts are presented from which the jury may reasonably infer that the crime has been committed, the question must be submitted to the jury. Hopson v. State, 352 So.2d 500, 502 (Ala.Cr.App.), affirmed, 352 So.2d 506 (Ala. 1976). However, circumstantial evidence justifies a conviction only when it is inconsistent with any reasonable theory of innocence.
 The humane provisions of the law are, that a prisoner, charged with a felony, should not be convicted on circumstantial evidence, unless it shows by a full measure of proof that the defendant is guilty. Such proof is always insufficient, unless it excludes, to a moral certainty, every other reasonable hypothesis, but that of the guilt of the accused. No matter how strong the circumstances, if they can be reconciled with the theory that some other person may have done the act, then the defendant is not shown to be guilty, by that full measure of proof which the law requires. Ex parte Acree, 63 Ala. 234 (1879).
 Guilt is not established by circumstantial evidence unless the facts relied on are such that it is the only conclusion fairly to be drawn from them. Fuquay v. State, 22 Ala. App. 243, 114 So. 892 (1927). If all the material circumstances in evidence point to guilt and exclude any reasonable hypothesis except that of guilt a conviction is warranted. Pruett v. State, 33 Ala. App. 491, 495, 35 So.2d 115 (1948).
We have examined the facts presented by the State, as outlined in the opinion of the Court of Criminal Appeals, and we have compared those facts with the wife's case. Sue Dolvin v. State,391 So.2d 666 (Ala.Cr.App. 1979) aff'd 391 So.2d 677 (Ala. 1980).
The Court of Criminal Appeals justifies its holding that the evidence was insufficient by stating:
 Here the State only proved that the defendant was in the victim's general neighborhood, that he defendant sought directions to the street on which the victim resided, and that the defendant had a possible motive for wanting to kill the victim. The defendant was never connected in any way with his wife and there was absolutely no evidence of any conspiracy between the defendant and his wife to kill the victim. The record discloses the clear and obvious absence of any circumstances from which the criminal agency of the defendant could be reasonably inferred and which would exclude any reasonable inference consistent with his innocence. *Page 139 
With the exception of the fact that the wife was placed in the vicinity of the crime at a point in time which more closely approximated the time of the commission of the crime than was her husband, and the fact that she was seen in the trooper station in Florida and her husband was not seen there, the inferences which could be drawn from the evidence by the jury in the two cases are the same. Yet, the Court of Criminal Appeals found that the evidence was sufficient in the Sue Dolvin case, but insufficient in this case.
We need not list again all the evidence produced by the State to connect the accused with the crime, but we are convinced that the evidence, viewed "in a light most favorable to the prosecution," was sufficient to allow the jury to reasonably conclude that the evidence excluded every reasonable hypothesis except that of guilt, the standard stated in Cumbo v. State,368 So.2d 871, 874 (Ala.Cr.App. 1978).
No person should be convicted, whether on circumstantial evidence or direct evidence, unless it is shown beyond a reasonable doubt that he is guilty; on the other hand, if the State meets its burden of proof, then a jury may find the defendant guilty.
The Court has said that the determination of whether the evidence is sufficient to justify the conviction is within the province of the jury as the finder of fact. In McDowell v.State, 238 Ala. 101, 189 So. 183 (1939), the Court opined:
 The corpus delicti is a fact, proof of which may be made by circumstantial evidence. If there is a reasonable inference deducible from the evidence of its existence, the court must submit the question of the sufficiency and weight of the evidence tending to support that inference to the jury. Martin v. State, [125 Ala. 64, 28 So. 92] supra; Lewis v. State, 220 Ala. 461, 125 So. 802; Wilson v. State, 191 Ala. 7, 67 So. 1010; Newell v. State, 115 Ala. 54, 22 So. 572.
Upon consideration of the facts set out in the opinion of the Court of Criminal Appeals, and applying the correct legal principles to that evidence, we conclude that the decision of the jury that the circumstantial evidence was sufficient to justify a conviction should not have been overturned by the Court of Criminal Appeals in this case. The decision of the Court of Criminal Appeals is, therefore, due to be reversed and the cause remanded to that court.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, JONES, SHORES, EMBRY and BEATTY, JJ., concur.
BLOODWORTH and ALMON, JJ., not sitting.