The appellant was convicted, pursuant to Code 1975, § 13A-5-31 (a)(3), of having carnal knowledge and of killing a girl under 12 years of age, or the abuse of such girl in an attempt to have carnal knowledge, during which the victim was intentionally killed by the appellant. The following issues are raised on appeal; (1) Did the court improperly admit the transcribed testimony of an absent witness at the appellant's preliminary hearing? (2) At the time the appellant was indicted had the United States Supreme Court declared Code 1975, § 13A-5-31 (a)(3) (the statute under which appellant was prosecuted) unconstitutional? (3) Did the procedures applied at the appellant's trial violate the ex post facto clause of the United States Constitution? (4) Did the defendant's age bar his conviction for carnal knowledge or rape? (5) Should there have been a jury instruction regarding the lesser included offense of manslaughter? (6) Did the State introduce sufficient evidence at trial to sustain the defendant's conviction? *Page 898 
 I. FACTS
A detailed account of the tragic facts in this case is adequately recorded in the decision of the Court of Criminal Appeals. Potts v. State, 426 So.2d 886 (Ala.Cr.App. 1982). Only a condensed version of that account needs to be repeated here.
Jody Lynn Potts, the appellant, was convicted of having carnal knowledge and the intentional murder of Wendy Wakin, a six-year-old female. Potts was convicted under Code 1975, 13A-5-31 (a)(3), and sentenced to life without parole. When the killing occurred, in September 1980, the appellant was 15 years old. Potts and Wendy lived with their families in a trailer park in Covington County. Witnesses testified that they had seen Potts playing with the victim on the evening she disappeared. One witness, Carol Owens Long, testified at trial that on the evening authorities discovered Wendy's body, she had a discussion with the appellant. Long testified at Potts's juvenile hearing, that Potts came to her trailer that night wet and smelling of a terrible odor. Potts allegedly said he had been searching for Wendy and asked Long if she smelled anything. Long testified that she told him that she smelled an odor like a horse lot and that Potts responded, "No it's not. It's Wendy." The appellant allegedly continued, "They are going to find her right over there," while indicating with his finger down towards the river. Later that evening, the authorities dragged the Conecuh River and found the victim's body. Evidence was presented showing that the victim had been stabbed and raped. Throughout his trial, the appellant admitted that he had been with Wendy on the evening she disappeared. Potts further claimed that while they were playing, a man in a blue Ford automobile beckoned them into his car and that he and Wendy ran from the car. Wendy allegedly was abducted and drove off with the man in the automobile. Authorities made a search for the driver and the car, but never located anyone fitting the description given by Potts.
II. DID THE COURT IMPROPERLY ADMIT THE TESTIMONY OF AN ABSENT WITNESS AT THE APPELLANT'S PRELIMINARY HEARING?
Three separate hearings were conducted, a juvenile hearing, a hearing on Potts's petition for writ of habeas corpus, and a preliminary hearing. Long did not appear at the preliminary hearing and her transcribed statement which had been taken at the juvenile hearing was introduced over the appellant's objection. She did appear and testify at appellant's trial, when the jury returned a guilty verdict.
The appellant asserts that the court improperly admitted transcribed testimony at the preliminary hearing. We do not agree. An accused in Alabama has a statutory right to demand a preliminary hearing after arrest and if that demand is made within 30 days of arrest it must be granted. Code 1975, §15-11-1. When Potts demanded a preliminary hearing, the thirty-day period had run. The court, acting within its discretion, nevertheless, granted the appellant's motion for a preliminary hearing.
The transcribed testimony of witness Long which had been taken at the appellant's juvenile hearing was introduced at the preliminary hearing. The record shows that the court reporter and the presiding judge at the juvenile proceeding testified as to the authenticity of Long's transcribed testimony. Further, the record indicates that a subpoena had been issued for Ms. Long to appear at the preliminary hearing and that the authorities were unable to serve her.
The appellant cites Holman v. Washington, 364 F.2d 618 (5th Cir. 1966), as authority for the proposition that transcribed testimony cannot be properly introduced at a preliminary hearing unless a proper predicate is laid. In Holman, the court established requirements for introduction of transcribed testimony at trial, not at preliminary proceedings. While a defendant has numerous procedural and substantive constitutional protections at trial, all these rights do not extend to preliminary hearings. *Page 899 
A defendant in Alabama does not have an absolute right to a preliminary hearing. Duncan v. State, 369 So.2d 885
(Ala.Cr.App. 1979); see also Nichols v. Estelle, 556 F.2d 1330,cert. denied 434 U.S. 1020, 98 S.Ct. 744, 54 L.Ed.2d 767 (5th Cir. 1977). The Court of Criminal Appeals did not err in holding that no reversible error occurred at the appellant's preliminary hearing.
The grand jury of Covington County indicted Potts during the March term, 1981, some two months after the preliminary hearing. Once an accused has been indicted, no grounds for reversible error exist when the accused's demand for a preliminary hearing is not satisfied. Duncan v. State,369 So.2d 885 (Ala.Cr.App. 1979). Potts's subsequent indictment, the predicate laid at the preliminary hearing regarding the transcribed testimony, the lack of a constitutional obligation to provide a defendant with a preliminary hearing, and Long's presence and testimony at the defendant's trial, are all reasons to find that the trial court did not commit reversible error by admitting the transcribed testimony at the preliminary hearing.
III. AT THE TIME THE APPELLANT WAS INDICTED HAD THE UNITED STATES SUPREME COURT DECLARED CODE 1975, § 13A-5-31 (a)(3) (THE STATUTE UNDER WHICH APPELLANT WAS PROSECUTED) UNCONSTITUTIONAL?
The offense with which Potts was charged occurred on September 20 or 21, 1980. The grand jury indicted him under Code 1975, § 13A-5-31 (a)(3). The appellant argues that the United States Supreme Court declared this statute unconstitutional in its Beck v. Alabama, 447 U.S. 625,100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), decision on June 20, 1980, three months before the grand jury returned its indictment. Potts asserts that because the statute under which he was indicted was unconstitutional, his conviction must, therefore, be void and reversed on appeal. We do not agree.
The United States Supreme Court did not declare § 13A-5-31 unconstitutional in Beck v. Alabama. In a recent decision, the United States Supreme Court examined its holding in Beck v.Alabama, and Chief Justice Burger wrote for the Supreme Court:
 "Subsequently, in Beck v. Alabama, 447 U.S. 625
[100 S.Ct. 2382, 65 L.Ed.2d 392] (1980), we held that the sentence of death could not be imposed after a jury verdict of guilt of a capital offense, when the jury was not permitted to consider a verdict of guilt of a lesser included noncapital offense, provided that the evidence would have supported such a verdict.
". . .
 "Our opinion in Beck stressed that the jury was faced with a situation in which its choices were only to convict the defendant and sentence him to death or find him not guilty. The jury could not take a third option of finding that although the defendant had committed a grave crime, it was not so grave as to warrant capital punishment. We concluded that a jury might have convicted Beck but also might have rejected capital punishment if it believed Beck's testimony. On the facts shown in Beck, we held that the defendant was entitled to a lesser included offense instruction as a matter of due process. Id., at 637 [100 S.Ct. at 2389].
". . .
 "It is important to note that our holding in Beck
was limited to the question submitted on certiorari, and we expressly pointed out that we granted the writ in that case to decide whether a jury must be permitted to convict a defendant of a lesser included offense `when the evidence would have supported such a verdict. . . .' 447 U.S., at 627
[100 S.Ct. at 2384]. Thus, our holding was that the jury must be permitted to consider a verdict of guilt of a non-capital offense `in every case' in which `the evidence would have supported such a verdict.'
". . .
 "Beck held that due process requires that a lesser included offense instruction be given when the evidence warrants such an instruction. But due process requires *Page 900 
that a lesser included offense instruction be given only when the evidence warrants such an instruction. The jury's discretion is thus channelled so that it may convict a defendant of any crime fairly supported by the evidence. . . ."
Hopper v. Evans, ___ U.S. ___, 102 S.Ct. 2049, 72 L.Ed.2d 367
(1982).
Thus, the United States Supreme Court's holding in Beck v.Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), did not declare the entire Alabama death penalty statute unconstitutional but only that portion of the statute that did not allow the jury to consider a verdict of guilt for a non-capital offense. On remand this Court, in Beck v. State, severed the preclusion clause from the death penalty statute. There this Court opined:
 "The remainder of the Alabama Capital Punishment Statute is complete within itself, sensible, and capable of execution after the preclusion clause is stricken. Absent the fourteen words which constitute the preclusion clause, the long established Alabama statutory and common law rule will apply so that juries in capital cases will be instructed on any lesser included offenses supported by the evidence. That rule applies in every state in this country, see, Beck v. Alabama, 100 S.Ct. at 2388-2389 n. 12; it was the rule in every case tried in Alabama for more than a hundred years before Furman; it is still the rule in non-capital cases tried in Alabama, see, Beck v. Alabama, 100 S.Ct. at 2385 n. 5, 2388-2389; and it would unquestionably have been the rule in Alabama's post-Furman capital cases had the Alabama legislature not misinterpreted Furman."
This Court acted within its power and modified the statute to comport with the United States Supreme Court's holding in Beckv. Alabama.
IV. DID THE PROCEDURES APPLIED AT THE APPELLANT'S TRIAL VIOLATE THE EX POST CLAUSE OF THE UNITED STATES CONSTITUTION?
The Court of Criminal Appeals correctly held that all the procedures at Pott's trial and sentencing followed the guidelines set forth in this Court's Beck v. State,396 So.2d 645 (Ala. 1980), decision. The appellant's argument that applying in his trial the procedures we set forth in Beck v.State, 396 So.2d 645 (Ala. 1980), violated the ex post facto
clause of the United States Constitution is without merit. The United States Supreme Court in an analogous decision involving Florida's death penalty statute, found no violation of the expost facto clause existed. See Dobbert v. Florida,432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977).
V. DID THE DEFENDANT'S AGE BAR HIS CONVICTION FOR CARNAL KNOWLEDGE OR RAPE?
The appellant was indicted under Ala. Code § 13A-5-31 (a)(3), which has been repealed by 1981 Ala. Acts No. 81-178. That section of the Criminal Code provided for a death penalty or life sentence without parole for a defendant that has "carnal knowledge of a girl under 12 years of age, . . ., when the victim is intentionally killed by the defendant." Id. There was no reference to the age of the defendant in § 13A-5-31 (a)(3).
The appellant argues that "carnal knowledge" in § 13A-5-31 (a)(3) was the same offense as rape in the first degree, codified at § 13A-6-61 (a)(3). The latter statute says that a male ". . . being 16 years or older" commits rape in the first degree when he "engages in sexual intercourse with a female who is less than 12 years old." Because Potts was 15 years old at the time the crime occurred, he argues that he could not have committed the crime of rape.
For a better understanding of the legislature's intent when passing § 13A-6-61, it is necessary to look to the pertinent committee comments.
 "Sections 13A-6-61, subdivision (a)(3), and 13A-6-62, subdivision (a)(1), supplant and are substantially the same as the present statutory rape sections, § 13-1-133, *Page 901 
carnal knowledge of girl under 12, and § 13-1-134, carnal knowledge of a girl over 12 and under 16 years of age. Under the Criminal Code, it is a defense to both that the male is under 16 years of age; and § 13A-6-62 (a)(1) applies only if defendant be at least two years older than a female. Present law recognizes the male's immaturity only where the victim is over 12 but under 16. The age, immaturity and lack of judgment of the offender are the determining factors in establishing an absence of culpability, not merely the age of the victim. In any event, the juvenile courts retain jurisdiction of those cases involving youthful offenders which warrant action."
Code 1975, § 13A-6-61 and -62, Commentary. In its opinion, the Court of Criminal Appeals explained the relationship between the pertinent Code sections and the appellant's age. Judge Tyson wrote:
 "After careful scrutiny of the pertinent code sections, it appears to us to have been the legislative intent to provide as a defense to the above referenced crimes, formally denominated as carnal knowledge, the fact that the appellant is under 16 years of age. Does this require then, that a defendant charged under § 13A-5-31 (a)(3) be 16 years of age or older to be culpable for that offense? The state argues that it does not, contending that the definitional component of § 13A-5-31 (a)(3) carnal knowledge is supplied by § 13-1-133 Code of Ala. 1975, in that the death penalty code sections were carried forward intact from the 1975 code to the new criminal code, without any definitional changes. However, § 13-1-133 was specifically repealed by § 9901 of Acts 1977, No. 607, p. 812 (Criminal Code). The new Criminal Code which carried the death penalty statute forward became effective on January 1, 1980, after the repeal of § 13-1-133. Additionally, the policy of the legislature in the new code provides for taking into consideration the age, immaturity, and lack of judgment of an appellant under the age of 16 years for sexual offenses. As well, the new code undertakes to define sexual offenses as a group under Chapter 6, Article 4. To hold that § 13A-5-31 (a)(3) creates its own sexual offense with a definition that disregards the appellant's age, may appear to contravene the apparent legislative policy of Chapter 6, Article 4, as well as recognizing § 13A-5-31 (a)(3) as creating a sexual offense not incorporated under Chapter 6, Article 4, which undertakes to define sexual offenses. However, it appears to us that the legislature intended to do exactly that by codifying separately those crimes it deemed worthy of capital punishment. As Justice Maddox stated in Beck,
 "`Without question, the legislature has spelled out specifically what offenses it considers to be capital offenses. The Alabama legislature has substantially followed the Model Penal Code in describing with specificity those offenses which are deemed capital offenses. Code 1975, § 13A-5-31. Each of the fourteen crimes specified requires an intentional killing with aggravation, and not some crime other than homicide under aggravated circumstances. Horsley v. State, Ala., 374 So.2d 375 (1979), Ala., 396 So.2d 645 (1981).'
 "The legislative policy for protecting youthful offenders by weighing their immaturity and lack of judgment in committing sexual offenses has no place in determining the culpability of a defendant who has been determined to be an adult and responsible for the criminal conduct he has undertaken which resulted in a capital murder. To hold otherwise would create the anomalous situation of finding the appellant culpable for the intentional murder portion of the crime, but not culpable for the sexual offense attached to the same crime. We therefore hold that § 13A-5-31 (a)(3), patterned after repealed § 13-1-333, itself defines the aggravating sexual offense and purposefully does so without regard to the age of the defendant."
Potts v. State, 426 So.2d 886, 894 (Ala.Cr.App. 1982). We agree with the reasoning of the Court of Criminal Appeals. We find *Page 902 
that Potts' age did not prohibit his conviction under § 13A-5-31.
VI. SHOULD THERE HAVE BEEN A JURY INSTRUCTION REGARDING THE LESSER INCLUDED OFFENSE OF MANSLAUGHTER?
The trial court correctly refused to give a jury instruction regarding the lesser included offense of manslaughter. The essential elements of manslaughter are (1) the reckless killing of another person, or (2) the killing of a person due to a sudden heat of passion caused by a provocation recognized by law. Code 1975, § 13A-6-3 (a)(1)(2). The appellant presented no evidence at trial which could possibly form the basis for a manslaughter instruction. Pott's defense consisted of a complete denial of killing the victim, and no evidence was ever introduced to prove that the death of Wendy Wakin was due to recklessness or heat of passion. While the trial court properly refused to give a manslaughter instruction, it did give the jury instructions regarding the lesser included offense of murder pursuant to § 13A-6-2 (a)(1). Therefore, the jury had the option to find Potts guilty of murder, absent the aggravating circumstances of carnal knowledge or rape, and fix his punishment at something less than life imprisonment without parole. § 13A-6-2 (a)(3), (c).
VII. DID THE STATE INTRODUCE SUFFICIENT EVIDENCE AT TRIAL TO SUSTAIN THE DEFENDANT'S CONVICTION?
Finally, this Court is urged to reverse this case because the evidence presented at trial did not sustain a conviction of homicide against the defendant. A homicide conviction can be sustained solely on circumstantial evidence. Cumbo v. State,368 So.2d 871 (Ala.Cr.App. 1978), cert. denied 368 So.2d 877
(Ala. 1979). There are numerous cases when the appellate courts have reviewed homicide convictions on the grounds of insufficient evidence to support a guilty verdict. See Grahamv. State, 374 So.2d 929 (Ala.Cr.App. 1979), writ quashed374 So.2d 942 (Ala. 1979); Johnston v. State, 387 So.2d 891
(Ala.Cr.App. 1980), writ denied 387 So.2d 905 (Ala. 1980);Dolvin v. State, 391 So.2d 133 (Ala. 1980). This Court has established the standard to review such convictions:
 "In reviewing a conviction based on circumstantial evidence, this court must view that evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. United States v. Black, 497 F.2d 1039 (5th Cir. 1974); United States v. McGlamory, 441 F.2d 130
(5th Cir. 1971); Clark v. United States, 293 F.2d 445
(5th Cir. 1961).
 "We must keep in mind that the test to be applied is not simply whether in the opinion of the trial judge or the appellate court the evidence fails to exclude every reasonable hypothesis but that of guilt; but rather whether the jury might so conclude. Harper v. United States, 405 F.2d 185 (5th Cir. 1969); Roberts v. United States, 416 F.2d 1216 (5th Cir. 1969). The procedure for appellate review of the sufficiency of the evidence has been aptly set out in Odom v. United States, 377 F.2d 853, 855 (5th Cir. 1967):
 "`Our obligation, therefore, is to examine the record to determine whether there is any theory of the evidence from which the jury might have excluded every hypothesis except guilty beyond a reasonable doubt. Rua v. United States, 5 Cir., 1963, 321 F.2d 140; Riggs v. United States, 5 Cir., 1960, 280 F.2d 949. In Judge Thornberry's words, * * * the standard utilized by this Court is not whether in our opinion the evidence and all reasonable inferences therefrom failed to exclude every hypothesis other than guilt, but rather whether there was evidence from which the jury
might reasonably so conclude. Williamson v. United States, 5th Cir., 1966, 365 F.2d 12, 14. (Emphasis supplied). *Page 903 
 "`The sanctity of the jury function demands that this court never substitute its decision for that of the jury. Our obligation is to examine the welter of evidence to determine if there exists any reasonable theory from which the jury might have concluded that the defendant was guilty of the crime charged. McGlamory, 441 F.2d at 135 and 136.'"
Dolvin v. State, 391 So.2d 133, 137-138 (Ala. 1980), (quotingCumbo v. State, 368 So.2d 871 (Ala.Cr.App. 1978)). After examining the record on appeal, we find that the "jury might reasonably conclude" that Potts was guilty and, therefore, we refuse to reverse this conviction because it was based on circumstantial evidence.
For the reasons set forth, the conviction of the appellant should be upheld and the judgment of the Court of Criminal Appeals is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, JONES, ALMON, SHORES and ADAMS, JJ., concur.
BEATTY, J., concurs in Parts I, II, III, IV, VI and VII; but dissents in Part V.
EMBRY, J., not sitting.