MADDOX, Justice
(dissenting).
This Court, after granting the State’s petition for certiorari, and after hearing oral arguments in the case, has now concluded that the writ is due to be quashed as having been improvidently granted. In this, the Court errs, because the opinion of the Court of Criminal Appeals is legally wrong on both the issue of the sufficiency of the evidence and the issue of ineffective assistance of counsel.
Admittedly, this is a case in which much of the evidence was circumstantial, and admittedly, in such cases, the rule of appellate review of the sufficiency of the evidence is different, but the Court of Criminal Appeals, in my opinion, has completely failed to follow the opinions of this Court that succinctly set out that rule of review.
The Court of Criminal Appeals has set out the facts in its opinion, and no useful purpose would be served by restating all of them in this dissent, but in order to show the basis for my dissent, I summarize the facts, using the statement of the facts from the opinion of the Court of Criminal Appeals to do that. Those facts are: A Drug Enforcement Agency officer received a telephone call on March 28, 1986, from the Miami DEA office concerning a specific tractor and trailer and two specific individuals. Based on the information received in that call, the DEA officer, along with Alabama Bureau of Investigation officers and sheriffs deputies, went to the Holiday Inn in Oxford and set up surveillance of Room 207, which was registered to one Samuel Montanez. Montanez had been registered previously at the same hotel on February 10 and 11 and February 27 and 28, and there were telephone calls listed on the hotel records as having been made to phone *1036 numbers registered to the two petitioners, and there was direct testimony by a witness, who had accompanied Montanez on one of the trips in February, that Montanez had made a telephone call from the hotel room, and that a few minutes later, two men came into the room, and that the name of one of the men was “Hoss” (admittedly the nickname for petitioner Self) and the other was named Jimmy (there was evidence that petitioner Clayton was also known as Jimmy Clay). This witness positively identified the two petitioners as the men who came to the hotel room, received cocaine from Montanez, left, and returned with $47,000. This witness, Teresa Bujei-ro, according to the opinion of the Court of Criminal Appeals, also testified that she accompanied Montanez to the Holiday Inn on another occasion and that on that occasion Montanez gave the petitioners a kilo of cocaine and the petitioners gave him a large amount of money. Bujeiro also testified that in early April she called petitioner Self and told him that Montanez claimed that Self owed him $50,000, that Self stated that he owed only $27,000 but that he could not send that much money through Western Union, and that he told her he would send $1000 by Western Union, which he did. A copy of a money order from Self to Bujeiro, dated April 8,1986, was introduced into evidence, as was a receipt signed by Bujeiro for the money.
The tractor and trailer were located by aerial surveillance, parked 100 feet from Selfs house (there was evidence that the tractor and trailer were secluded). A search warrant was issued, and officers executing the warrant smelled the odor of marijuana inside the trailer, but found none. They did find 963.9 grams of cocaine in the storage compartment of the trailer sleeper in a white styrofoam cooler, after they had forcefully entered the trailer unit. The tractor was registered in the name of Roland Blanco and the trailer was registered to his mother; both were listed as living in Leisure City, Florida.
Montanez was arrested in Room 207. Keys to the tractor, the trailer, and the storage compartment were found in the room, as was a piece of paper entitled “ledger,” on which several names and numbers were written, including the names “Hoss Cartwright” and “Jimmy Clay” (these petitioners) and the numbers “831-5281” and “835-0646,” respectively, beside those names.
Based upon all this highly incriminating evidence of the trafficking in, and possession of, cocaine, which had occurred on two occasions in February and which involved both of these two petitioners, and in view of all the facts and circumstances surrounding the event that gave rise to this prosecution, I cannot see how the Court of Criminal Appeals reached the conclusion that the evidence was insufficient to show that they were guilty of the offense for which they were charged. From a reading of the opinion, and the cases cited therein, I can conclude only that the court failed to follow the rule of review that this Court has established for cases wherein the evidence is circumstantial. That rule is succinctly stated in Dolvin v. State, 391 So.2d 133 (Ala.1980), a murder case in which the Court of Criminal Appeals, as here, had held that the evidence, which was substantially circumstantial, was insufficient. In that case, this Court reversed the judgment of the Court of Criminal Appeals and, quoting the rule from the earlier Court of Criminal Appeals case of Cumbo v. State, 368 So.2d 871 (Ala.Crim.App.1978), cert. denied, 368 So.2d 877 (Ala.1979), held as follows:
“The Court of Criminal Appeals correctly held that circumstantial evidence alone may be sufficient to prove the accused’s commission of or participation in the killing, but concluded that the evidence presented by the State was insufficient.
“The Court of Criminal Appeals correctly cited Kimmons v. State, 343 So.2d 542 (Ala.Cr.App.1977), as standing for the proposition that ‘the mere presence of a person at the time and place of a crime is not sufficient to justify his conviction for the commission of the crime.’ That court omitted, however, to state that if presence at the time and place a crime is committed, in conjunction with other facts and circumstances, tends to *1037 connect the accused with the commission of the crime, then the jury may find the accused guilty. In Kimmoris, the court said:
“ ‘A more proper and correct statement of the rule is that the fact that at or about the time of the commission of the offense with which the accused is charged, he and the accomplice were together, in or near the place where the crime was committed, may, in conjunction with other facts and circumstances, sufficiently tend to connect the accused with the commission of the crime to furnish the necessary corroboration of the accomplice.’
“This Court has stated the rule as follows:
“ ‘Circumstantial evidence alone is enough to support a guilty verdict of the most heinous crime, provided the jury believes beyond a reasonable doubt that the accused is guilty. Lowe v. State, 90 Fla. 255, 105 So. 829 (1925). Circumstantial evidence is said to be the inference of a fact in issue which follows as a natural consequence according to reason and common experience from known collateral facts. Lowe, supra.’
“White v. State, 294 Ala. 265, 272, 314 So.2d 857, cert. denied, 423 U.S. 951, 96 S.Ct. 373, 46 L.Ed.2d 288 (1975).
“In reviewing the sufficiency of the evidence, we think the Court of Criminal Appeals did not correctly apply the test set out in Cumbo v. State, 368 So.2d 871, 874 (Ala.Cr.App.1978), although we nóte that the court cited that case. In Cum-bo, the court said:
“ ‘In reviewing a conviction based on circumstantial evidence, this court must view that evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excluded every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. United States v. Black, 497 F.2d 1039 (5th Cir.1974); United States v. McGlamory, 441 F.2d 130 (5th Cir.1971); Clark v. United States, 293 F.2d 445 (5th Cir.1961).
“ ‘[W]e must keep in mind that the test to be applied is not simply whether in the opinion of the trial judge or the appellate court the evidence fails to exclude every reasonable hypothesis but that of guilt; but rather whether the jury might so conclude. Harper v. United States, 405 F.2d 185 (5th Cir.1969); Roberts v. United States, 416 F.2d 1216 (5th Cir.1969). The procedure for appellate review of the sufficiency of the evidence has been aptly set out in Odom v. United States, 377 F.2d 853, 855 (5th Cir.1967):
“ ‘ “Our obligation, therefore, is to examine the record to determine whether there is any theory of the evidence from which the jury might have excluded every hypothesis except guilty beyond a reasonable doubt. Rua v. United States, 5 Cir., 1963, 321 F.2d 140; Riggs v. United States, 5 Cir., 1960, 280 F.2d 949. In Judge Thornberry’s words, ‘ * * * the standard utilized by this Court is not whether in our opinion the evidence and all reasonable inferences therefrom failed to exclude every hypothesis other than guilt, but rather whether there was evidence from which the jury might reasonably so conclude.’ Williamson v. United States, 5th Cir. 1966, 365 F.2d 12, 14. (Emphasis supplied).
“ ‘ “The sanctity of the jury function demands that this court never substitute its decision for that of the jury. Our obligation is to examine the welter of evidence to determine if there exists any reasonable theory from which the jury might have concluded that the defendant was guilty of the crime charged. McGlamory, 441 F.2d at 135 and 136.”
“ ‘See also Blair v. State, 18 Ala.App. 615, 93 So. 45 (1922). Whether circumstantial evidence tending to connect the defendant with the crime excludes, to a moral certainty, every other rea *1038 sonable hypothesis than that of the defendant’s guilt is a question for the jury and not the court. Cannon v. State, 17 Ala.App. 82, 81 So. 860 (1919); see also Evans v. State, 39 Ala.App. 404, 408, 103 So.2d 40, cert. denied, 267 Ala. 695, 103 So.2d 44 (1958).’ ”
391 So.2d at 137-38.
The Court of Criminal Appeals did not review the Evidence in a light most favorable to the State
One of the mandates of Dolvin is that an appellate court must review circumstantial evidence in the light most favorable to the prosecution.- In this case, the Court of Criminal Appeals did the opposite. It applied a test that gave little credence to the State’s testimony, either direct or circumstantial, and, in essence, held that the State, in order to prove that petitioners were in constructive possession of the cocaine, would be required to put the smoking gun, or in this case, the magic keys, in the hands of the petitioners, before there could be a conviction.[1]
Could the Jury have reasonably found that the evidence excluded every reasonable hypothesis except that of guilt?
Another test set out in Dolvin is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether the evidence, in fact, excluded every reasonable hypothesis except that of guilt. Clearly, the first test should have been applied here; unfortunately, the Court of Criminal Appeals applied the latter test to the evidence in this case.
Test to be applied by the Jury, not the Courts
The test is not whether the trial court or an appellate court thinks the evidence fails to exclude every reasonable hypothesis but that of guilt; but whether the jury might reasonably so conclude. In this case, it is obvious that the Court of Criminal Appeals reviewed the evidence de novo and reached its own conclusion that the evidence failed to reasonably exclude every hypothesis but that of guilt. As the United States Court of Appeals for the Fifth Circuit said in Odom v. United States, 377 F.2d 853 (5th Cir.1967), the obligation of an appellate court “is to examine the record to determine whether there is any theory of the evidence from which the jury might have excluded every hypothesis except guilt beyond a reasonable doubt.” As that Court so aptly stated the rule: “The sanctity of the jury function demands that this court never substitute its decision for that of the jury.” 377 F.2d at 855.
The fact that evidence is circumstantial does not make it deficient
“Circumstantial evidence ... is intrinsically no different from testimonial evidence.” Holland v. United States, 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954). In Holland, the Court expressed the reason for the rule: that a court should not substitute its judgment for that of the jury, even when the evidence is circumstantial:
“Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more.... ”
The Court did not consider the accomplice theory
In their brief, and at oral argument, counsel for petitioners complained that the State tried the petitioners as if they were charged with a conspiracy. They were not, of course, but counsel for petitioners, I think, failed to appreciate the thrust of the *1039 State’s argument that the Court of Criminal Appeals ignored the theory of “accomplice liability.” I agree with the State that it appears that the Court of Criminal Appeals did not even consider whether the evidence, direct and circumstantial, was sufficient to allow the jury to infer that the petitioners aided and abetted the commission of the crime. Alabama’s Criminal Code, § 13A-2-23(2), provides that “[a] person is legally accountable for the behavior of another constituting a criminal offense if, with intent to promote or assist the commission of the offense: ... (2) [h]e aids or abets such other person to commit the offense.” I find no indication in the opinion of the Court,of Criminal Appeals that that court considered this principle of criminal accountability.
The court dealt in ‘possibilities, not probabilities
It is apparent from a reading of the opinion of the Court of Criminal Appeals that that court dealt in possibilities, not probabilities, in reviewing the evidence in this case, and applied a sort of “library analysis” to the testimony rather than reviewing it to determine whether there was evidence of knowledge and complicity of that degree that would have authorized the jury, not the Court, to conclude that the evidence excluded every reasonable hypothesis but that of guilt beyond a reasonable doubt.
The distinctions between possibilities and probabilities has recently been considered by the Supreme Court of the United States in cases involving investigatory stops and searches and seizures, and that Court has clearly distinguished between what is probable and what is possible. Cf. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); United States v. Sokolow, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). It is possible that Blanco and Montanez parked the tractor and trailer rig on Self’s land, and that Clayton, who worked for Self, did not see the rig or thought there was nothing unusual about its being there. It is possible that Blanco and Montanez came all the way from Miami to Talladega to buy a load of hay, and brought a refrigerated trailer in which to haul it back, but the jury could have found that it was not probable. It is possible that Clayton was, in fact, going to see about the horses late at night, but was it probable? Did the jury have to exclude all the possibilities of what could have happened, or was it the jury’s duty to determine whether the circumstantial evidence reasonably pointed to the guilt of the petitioners? I think that it was for the jury to make that determination, and that the Court of Criminal Appeals substituted its judgment on the evidence for that of the jury. Consequently, I dissent as to that issue.
Ineffective Assistance of Counsel
I also disagree with the Court of Criminal Appeals on the question of the ineffectiveness of petitioners’ counsel. The trial judge held a hearing on the question and entered the following order:
“The Court having heard evidence offered by both parties on the Defendant’s Post Trial Motions, and the Court having considered all that evidence, including the demeanor of the witnesses-, and having made decisions concerning the credibility of the witnesses, the Court makes the following fact findings.
“In June of 1987, Larry McCoy Self and in August of 1987, Jimmy Asher Clayton were arrested on indictments returned by the April 1987 Term of the Talladega County Grand Jury for offenses committed on or about the 28th day of March, 1986.
“On March 28, 1986, Mike Martin, a deputy sheriff of Talladega County, Alabama, talked with a confidential informant by the name of Renee Korreckt. Renee Korreckt gave Mike Martin certain information concerning Larry McCoy Self, namely, that if the Cubans are here there will be cocaine there and that Joe White, who was present at Self Farm when the search warrant was served March 28, 1986, had come to her house within the two preceding days and had some cocaine and that if Joe White has cocaine, Hoss (Larry McCoy Self) has it, because that is where he gets his. *1040 The Court finds that Mike Martin’s conclusion that ‘Hoss Self is in possession of a quantity of cocaine’ is as a result of his conversations on March 28, 1986, with Renee Korreckt. The Court further finds that the only portion of the affidavit of Mike Martin (Exhibit B) in Support of Request for a Search Warrant attributed to a conversation between Mike Martin and Renee Korreckt is as follows: ‘within the past seventy-two (72) hours I have received information from a confidential and reliable source that Hoss Self is in possession of a quantity of cocaine.’ The Court further finds that if the statement referred to hereinabove was removed from the Martin Affidavit, (Exhibit B) in Support of Request for a Search Warrant then, in that event, the Search Warrant and affidavits would support a finding of probable cause. The Court further finds that if Exhibit B which is attached to the affidavit in Support of Request for a Search Warrant, was removed from said Request, that the other affidavits would support a finding of probable cause for said Search Warrant.
“The Court further finds that the State of Alabama had no direct or indirect knowledge of the existence of a taped conversation between- Mike Martin and Renee Korreckt prior to January 22, 1988.
“The Court further finds that in July, 1985, the legal representation of Renee Korreckt by Steve Salter terminated. That Renee Korreckt after that time, was represented by John Medaris and Greg Wood, and that Steve Salter did not have a conflict of interest in his representation of Larry McCoy Self and that Larry McCoy Self’s 6th Amendment Right to Effective Assistance of Counsel was not violated.
“The Court further finds that Steve Salter, during an in camera proceeding, first said that Renee Korreckt was the confidential informant and then that Mike Martin disclosed the identity of the confidential informant on the witness stand. The Court further finds that the District Attorney’s office did not know the identity of the confidential informant prior to this disclosure. That Steve Salter conferred with Renee Korreckt as a witness during the Motion to Suppress the Marijuana that was removed from the Self residence on March 29, 1986.
“The Court further finds that the decision not to call Renee Korreckt as a witness in the Motion to Suppress, was a trial decision made by an attorney during trial and was a tactical and strategic decision. That said decision was not as a result of a possible or potential conflict of interest as heretofore ruled. The Court further finds that Renee Korreckt was not present during any stages of the commission of the offense and therefore, was not a material witness.
“The Court further finds that the defendants Self and Clayton did not have, nor did they assert, standing to object to the search of the tractor trailer which was located on the Self farm on March 28, 1986, which led to the ultimate seizure of the cocaine.
“The Court further finds as a result of the foregoing, that the defendants, Self’s and Clayton’s 4th Amendment and 6th Amendment Rights were not violated and that defendants, Self and Clayton were not denied or deprived of the effective assistance of counsel.
“All other matters as raised in the Post Trial Motions and of which no evidence was produced in said hearing are hereby overruled.
“s/Jerry L. Fielding
“Circuit Judge
“Talladega County, Alabama”
It is quite apparent from the trial court’s order that the court considered every argument made in the Court of Criminal Appeals and in this Court on the ineffectiveness issue, and resolved the factual question adversely to the petitioners. It would appear to me that the Court of Criminal Appeals should have accorded more weight to the findings of the trial judge in this case.[2] Judge Fielding, who was on the *1041 scene, knew all the facts and the principles of law, and he found that the petitioners failed to sustain their claim of ineffective assistance of counsel, and specifically found that their action in not calling Renee Korreckt as a witness at the hearing on the motion to suppress “was a tactical and strategic decision.” After reading the portion of the record that deals with this issue, I think the judge was right. I would sustain his judgment in the matter; therefore, I dissent on this issue also.
STEAGALL, J., concurs.

. Petitioners' attorneys, in their brief, argue that exact point. They contend that "[t]here was no charge of conspiracy to possess cocaine, although the State would like to pretend otherwise.” There was substantial evidence of complicity that would make petitioners "legally accountable.” Code of Alabama 1975, § 13A-2-23(2).

. In a footnote in its reply brief here, the State suggests that the issue of ineffective assistance *1041 of counsel was not seriously pressed at the hearing on the motion for new trial and that “[t]here is, of course, the possibility that these lawyers (the ones alleged to be ineffective and having a conflict of interest) were hired by the Respondents in an effort to set up a reversal because of conflict of interest.” While it is possible that this did happen, it probably did not. At least, I hope that the judicial system would not be manipulated in such a manner.